Massachusetts Bonding & Insurance Company *v.*
Johnston & Harder, Inc., Appellant, et al.

Argued October 30, 1940. Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

254

*H. Steward Dunn,* with him *Roy Rose* and *Wm. G. Bechman,* of *Rose, Bechman & Dunn,* and *Edward G. Bothwell,* for appellant.

*T. F. Ryan,* with him *Joseph H. Bialas,* of *Bialas & Ryan,* for appellee.

OPINION BY MR. JUSTICE MAXEY, November 25, 1940:
This litigation was begun by a bill for an accounting. Plaintiff is a Massachusetts corporation engaged in the business of liability insurance and acting as surety and guarantor, and is duly registered to transact business in Pennsylvania. Defendant, Johnston & Harder, Inc., (hereinafter referred to as J-H), is a Pennsylvania corporation, engaged in the business of acting as insurance agent. Its principal office is in Pittsburgh. Defendant, Affiliated Insurance Agencies, Inc., (hereinafter referred to as Affiliated), is a Pennsylvania corporation, engaged in the business of handling and managing the office work and other detail for such insurance agents or agencies as may be its stockholders or members.

For a period of time, commencing before 1929 and continuing until February 3, 1936, J-H was plaintiff's general agent in western Pennsylvania under and in accordance with the provisions of a contract dated September 10, 1917, succeeding the individuals and partnership therein designated as the general agents. According to the contract, premiums due on policies of insurance issued in accordance therewith were collectible by J-H. The bill of complaint alleges that premiums so collected were the property of plaintiff, constituting the trust funds due plaintiff for the benefit of all its policyholders. In 1929 J-H became a stockholder in and a member of Affiliated. This second corporation per-

formed the clerical work of J-H, sent out its bills and collected its premiums. This work was done by the second corporation in the name of J-H. The bill of complaint avers that Affiliated knew that the premiums collected by it for J-H constituted trust funds due plaintiff for the benefit of all its policyholders, and that either or both defendants possessing said funds were trustees thereof and accountable therefor. On February 3, 1936, plaintiff served notice on J-H of the immediate cancellation of the contract of September 10, 1917. The bill of complaint avers that J-H has not made to plaintiff final and complete reports or remittance for premiums collected by J-H and Affiliated, as required by the agreement, with respect to policies effective thereunder on and after December 1, 1935. The total amount of such funds is alleged to be in excess of $20,000. Since defendants have refused to pay the same, plaintiff demands an accounting from them and an injunction restraining them from withholding or in any way appropriating funds and moneys due and belonging to plaintiff in the hands of defendants or either of them.

J-H in its answer sets forth that it, together with Hoover & Diggs Co., a Pennsylvania corporation, organized Affiliated, for the purpose of furnishing office space, engaging experts experienced in different branches of insurance, and for generally managing, doing the clerical work, collecting and supervising the business of said companies, or any other agency that might become a member of Affiliated. This defendant denies that premiums collected by it were "trust funds" due plaintiff for the benefit of all its stockholders but admits that the amount of said premiums, less commissions, charges, etc., were to be remitted to plaintiff, by J-H, under agreements entered into. Affiliated collected the premiums, deducted the commissions, returns, etc., and made its accounting and payments thereof direct to J-H, and in turn the latter made its reports and accounting to the plaintiff of such parts of the premiums as it

would be entitled to after said deductions were made. J-H further answers that "the immediate cancellation of said 'agency contract' by plaintiff was inequitable, unlawful, without right, cause, prior notice, or any violation of your respondent, and the plaintiff took advantage of its position by this means, together with other acts, deeds done, representations, etc., made to take over and acquire the insurance business of your respondent without compensation, to its irreparable injury and damage." J-H admits that Affiliated, since February 3, 1936, has collected premiums of insurance on policies written by it but denies that any part of said funds were turned over to it although it has made written demand therefor. It further answers that it has been informed by Affiliated that plaintiff has made demands upon it for the payment of premiums collected by it since February 3, 1936, and that said defendant has refused to pay the same to plaintiff, and respondent denies that the funds are "trust funds" or are being arbitrarily withheld by Affiliated, but its refusal to turn same over to the respondent is because of this suit. J-H avers that "it is in need of equitable relief for the return of its business, for discovery and accounting and for injury, damage and loss suffered by your respondent . . . by the wrongful cancellations, acts, deeds, collusion, fraud, and means used by the plaintiff to take over and to acquire and confiscate, without compensation, the insurance business, list of policyholders, etc., of your respondent, Johnston & Harder, Inc."

J-H then sets up new matter in support of its claim for equitable relief, a discovery and accounting. It avers that since 1917, it has been the sole representative of plaintiff in this territory, that it has at great cost and expense developed a sub-agency business of diversified lines of insurance of approximately $100,000 annual premium volume, and has also developed a list of policyholders, whose insurance business it has handled for years, aggregating an annual premium volume of ap-

proximately $100,000, and that it has created a reputation and good will in servicing its policyholders, which made its stock valuable. On February 3, 1936, it is averred, plaintiff "with the intent of acquiring said business of . . . [J-H], without compensation, unlawfully cancelled the 'agency contract' effective immediately and served such cancellation notice on H. P. Johnston, president, who, together with the other controlling directors in Johnston & Harder, Inc., not only acquiesced in but plaintiff had them assist it in taking said list of policyholders and insurance business out of [J-H] and placing same with its branch office opened by plaintiff in Pittsburgh." This was done, so it is alleged, without "granting an opportunity to Johnston & Harder, Inc., or its minority interest, namely, D. Lloyd Swank, Secretary, stockholder and director, or the Affiliated, its representative, handling its business, to meet the same or to safeguard and protect, or replace the insurance business of" J-H. It is further set forth in the new matter in J-H's answer that "by said immediate cancellation, acts, deeds, methods and means used by said Bonding Company, said sub-agency business comprising $100,000.00 premium annual volume, was immediately taken over by plaintiff and transferred out of [J-H] and into the Bonding Company to its gain." It is further set up as new matter that "plaintiff through its controlled directors in [J-H], called a directors' meeting and offered their resignations, when D. Lloyd Swank, Secretary and minority stockholder, demanded that the directors take the necessary legal action to protect the company's business which they refused to do."

J-H averred that the acts of the plaintiff "constituted a fraud" and prayed the court to decree that the immediate cancellation of the "agency contract" by the plaintiff was unlawful; that the respondent was entitled to at least thirty days' notice of cancellation by the plaintiff, in the absence of any drastic violation proven, causing irreparable injuries to plaintiff; that the respondent

is entitled to prior notice of any violation and a demand of compliance therewith within a reasonable period by plaintiff precedent to any right in the plaintiff to cancel said "agency contract," particularly short of a thirty-day period; that the means and methods used by the plaintiff in causing the list of policyholders and insurance business of J-H to be handled direct with the plaintiff company through its Pittsburgh branch office, instead of through J-H, was and is unlawful, fraudulent and injurious to the respondent; that said subagency insurance business be returned and accounted for by the plaintiff to your respondent; that said list of policyholders and customers, and their direct insurance business developed and written by J-H for many years and renewals thereof taken over or confiscated by plaintiff, be returned or replaced to or through J-H and duly accounted for. J-H prayed further that the court "order and decree a discovery and an accounting by plaintiff . . . to respondent on account of the loss, injury, and damage suffered and that will be suffered . . .," and "order and decree that any funds in the hands of [Affiliated] or that may be collected by it be withheld pending the disposition of the controversy between plaintiff and respondent and that the same be applied on account of damages awarded the respondent."

The defendant, Affiliated Insurance Agencies, Inc., filed an answer asking, inter alia, the court to order and decree the respondent to pay into the court whatever funds are "in its possession, collected by it, or that may be collected by it for" J-H, and that "said funds be held by this court pending the disposition of the controversy" between the plaintiff and J-H.

After hearing, the chancellor made certain findings of fact and three conclusions of law. His 18th finding of fact is as follows: "The plaintiff company was justified, under the terms of its agreement with [J-H] to cancel the contract summarily, because its officials, in conversations with Messrs. Johnston and Swank, had the right

to conclude that, in spite of its efforts, the best interests of the plaintiff company were not being protected by [J-H]. The clause in the agreement authorizing said cancellation reads as follows: 'Fourth: That this contract will become effective from the first day of January, A. D. 1917, superseding all previous agreements or former contracts between the Company and General Agents, and will continue in force thereafter subject to cancellation upon thirty (30) days' notice from either party to the other, provided, however, that any violation of or failure to comply with any of the conditions or provisions herein by the said General Agents may be considered by the Company as sufficient cause for the immediate termination of this contract, and that the Company shall not be liable to the said General Agents for any loss, injury or damage that may result from such termination.' "

The conclusions of law are as follows: "1st. The cancellation of the general agency contract between the Massachusetts Bonding & Insurance Company, plaintiff, and [J-H], holder of said contract, on February 3, 1936, was not the result of any actual or legal fraud or design or scheme on the part of said bonding company to defraud" J-H. "2nd. The Massachusetts Bonding & Insurance Company had the right to cancel its general agency contract with [J-H] on February 3, 1936, under the terms of its contract, the supplemental agreements, exhibits and the evidence offered in this case. 3rd. The Affiliated . . ., defendant, was the stakeholder of the funds in its hands and belonging to the Massachusetts Bonding & Insurance Company, which it legitimately received from [J-H], defendant, and therefore was obligated to protect its rights in disbursing this fund by the employment of counsel and, therefore, should have its counsel compensated from the fund." In a decree nisi it was ordered: "First—That the prayer of [J-H], the defendant, for affirmative relief be and the same is hereby disallowed and dismissed. Second—That Rose, Bech-

man & Dunn, attorneys for the Affiliated . . ., are awarded from the fund now in the registry of this court the sum of $650.00, for legal services rendered to that defendant company, an admitted stakeholder. Third— That the balance of the fund of $15,531.72, less poundage and the record costs of this proceeding, is directed to be paid to Massachusetts Bonding & Insurance Company, plaintiff, or its attorneys of record."

J-H filed exceptions to these findings and conclusions of law of the chancellor. The plaintiff also filed certain exceptions. These exceptions were all dismissed, the court in banc saying, inter alia: "It is our conclusion that the adjudication should not be modified or disturbed. . . . Under the terms of the agreement between the plaintiff company and Johnston & Harder, Inc., which was originally entered into in 1917, . . . either party had the right to cancel the contract within thirty days and, further, that for violation of or failure to comply with any of the conditions or provisions by the general agents, and, in the discretion of the plaintiff company, that it could cancel and terminate the contract forthwith; and that said company would not be liable to the general agent for any loss, injury or damage that may result from said termination. All of the books, records and papers of the general agents (Johnston & Harder, Inc.,) under the terms of the contract, remained the property of the plaintiff company." The court said further: "There appears to be ample evidence for the chancellor to find as a fact, that the best interests of the plaintiff company were not being looked after by the defendant, Johnston & Harder, Inc., and that therefore summary cancellation of the contract, without giving thirty days' notice, was not in breach thereof. Based on such a finding, the general agent's claim for affirmative relief and injunctive action, or for the assessment of damages, must necessarily fall." A final decree in conformity with the decree nisi was entered. Johnston & Harder, Inc., thereupon appealed.

Section 450 of the Restatement of Agency says: "A principal has a duty not to repudiate or terminate the employment in violation of the contract of employment. . . . If the principal has contracted to employ the agent for a specified time or until the happening of a specified contingency he has a duty not to exercise the power to terminate the employment." 17 C.J.S. page 891, sec. 400, says: "The conditions imposed by the contract as precedent to the exercise of the right to terminate, including the method by which termination is to be effected, must be complied with and the grounds for termination must have accrued."

This court held in *Wright v. Bristol Patent Leather Co.*, 257 Pa. 552, 101 A. 844, that where a contract prescribed the mode in which the right of rescission shall be exercised, or provides that certain specified acts shall be done as a condition to the right to rescind, it must be strictly followed, and the party cannot rescind in any other mode nor without complying with the conditions. See also *Press Pub. Co. v. Reading News Agency*, 44 Pa. Superior Ct. 428, and Williston on Contracts (Rev. Ed.) Vol. 4, sec. 1027a, p. 2863.

It is settled that the existence of the condition subsequent which can be invoked as justifying the termination of a contract must be proved by the terminating party. See *Javierre v. Central Altagracia*, 217 U. S. 502, and 13 C. J., p. 607, sec. 633, and page 608, sec. 643, 17 C. J. S., Contracts, sections 400, 407.

Since plaintiff terminated this contract immediately, the burden was upon it to prove the other party's "violation of or failure to comply with the conditions or provisions herein as sufficient cause for the immediate termination" of the contract. While the chancellor found that "the plaintiff company was justified . . . to cancel the contract summarily," he formally found no facts to support that conclusion. In the absence of such a finding the decree entered is without required factual support.

Appellee says in its paper book: "The contract was cancelled in good faith, whether rightfully or mistakenly." Because J-H averred that the acts of the plaintiff "constituted a fraud," appellee contends that J-H must prove it in order to establish its counterclaim. We do not so interpret the pleadings. J-H may, either expressly or by implication, have pleaded more than was required to establish its claim. Its averment heretofore quoted that "the immediate cancellation" referred to "was unlawful" was all that was incumbent upon it to prove in order to establish the fact that its claim for damages had a legal foundation. When this case was previously before us (330 Pa. 336, 199 A. 216) upon preliminary objections challenging the right of defendants to file separate answers, and attacking the answer of Johnston & Harder, Inc., as unresponsive and improper because it set up a separate and distinct cause of action, and the objections were dismissed and the plaintiff was directed to file a reply to the new matter, we characterized the counterclaim as one "for unliquidated damages for the unlawful cancellation of the agency contract by" the plaintiff "and the fraudulent seizure of" J-H's "business." The seizure of the business resulted from the unlawful cancellation of the contract and it is immaterial whether it was fraudulent or not. Liability for a breach of contract does *not* (except possibly under circumstances not present here) depend upon the breach being induced or attended by fraud.

Plaintiff says in its brief: "We admitted, and the Chancellor so indicates, that if appellee were mistaken in its grounds for cancellation legal damages would be assessable based upon proper averment of a legal measure thereof. However, even in the absence of such an averment there is no proof of damages as allegedly flowing from the cancellation and this no doubt because there were no specific damages as J-H had in January, 1936, sent out for renewal all policies expiring in February, 1936, and received the commissions thereon."

What the chancellor said on this point is as follows: "It must be said in fairness to counsel for the plaintiff company, that they have not urged in their oral argument or briefs, that damages could not be assessed against their client because of impossibility of liquidation. They have consistently taken the position that, first, their client-company perpetrated no wrong upon Johnston & Harder, Inc., and, secondly, that even if the company acted hastily, the measure of damage would be only the loss of the net earnings for a period of thirty days, when the contract could be cancelled without giving any reason." In the paragraph of the adjudication preceding the paragraph just quoted, the chancellor said on the question of damages: "Johnston & Harder, Inc., defendant, offered testimony of three experienced insurance men, to the effect that the gross business of that company would have a sale value in the open market, of between $68,000 and $90,000, if that company knew that its contract would be cancelled by the plaintiff company within thirty days. This evidence was heard because, if it was later to be found that a fraud had been perpetrated upon Johnston & Harder, Inc., by the plaintiff company, that damages should be allowed to it. This was opinion evidence and none of the witnesses had any personal experience or any knowledge that would exactly allow them to support the figures which they gave. This, however, would be not unusual, because the sale of a general insurance agency, such as held by Johnston & Harder, Inc., is most infrequent in the open investment market. Had we reached the conclusion that there was a fraud perpetrated upon Johnston & Harder, Inc., then this opinion evidence would be of value to the court in assessing the damages."

It is clear from the foregoing that there is evidence in the record which the chancellor and the court below could have properly considered in assessing damages in this case had it been found as a fact that the summary cancellation of the contract was not justified. Since this

"finding" of justification made by the chancellor and upheld by the court below is a conclusion rather than a finding of fact, the conclusion and the decree based upon it must fall unless a fact or facts can legitimately be found to support it.

We agree with the appellant that "the record in an equity case should be in such condition that the appellate court should be able to make final disposition of the cause in an appeal from a final decree below." Appellant complains that the court in banc failed to perform the duty prescribed by Equity Rule 71, which provides, inter alia, that "exceptions which aver that the chancellor's adjudication fails to make substantial disposition of requests for findings of fact, must be answered specifically by findings, refusing to find, or qualifying the facts alleged, and not by a simple refusal of the request." The mandate of Rule 71 is unambiguous and must be complied with.

The basic contested question in this case is whether the defendant, Johnston & Harder, Inc., is entitled to an accounting from the plaintiff. That depends on whether or not the plaintiff was legally justified in cancelling the contract summarily. If it was, J-H can claim against the plaintiff no damages for its cancellation. If it was *not,* its right to damages is clear and the amount of such damages would be a matter of proof. If such damages were proved, they would be a factor in the final disposition of this case, which originated, as already stated, in plaintiff's claim for an accounting of plaintiff's insurance business transacted for it by the defendant counterclaimant. As to what justification, if any, there was for the cancellation of the contract, the adjudication is silent. In *Mt. Carmel Boro. v. Lehigh Valley Coal Co.,* 237 Pa. 186, 85 A. 137, this court, on an appeal from a decree of the court below on a bill in equity, remitted the case for a rehearing because there were no proper findings as to certain facts which were essential to a just disposition of the case.

On account of the inadequacy of the findings of fact in the adjudication, the decree of the court below is reversed and the record is remitted to the court below for further proceedings in accordance with this opinion; costs to abide the final disposition of the case.