Morris *v.* Featro et al., Appellants.

Argued November 26, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Henry L. Snyder,* with him *Donald L. McCay,* for appellants.

*Thomas F. Garrahan,* with him *John J. Dobosh* and *George I. Puhak,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, January 6, 1941:
This appeal arises out of a controversy, between two rival factions, over the right to the control and use of the property of St. John's Greek Catholic Church of Lansford, Pennsylvania (hereinafter referred to as St. John's Church). One group, represented by Joseph Featro et al., appellants, claims that this church was dedicated as and remains an independent or autocephalous Greek Catholic Church, independent of all ecclesiastical authority other than the congregation itself; the other group, represented by Rev. Michael Morris, appellee and pastor of the church, claims that the congregation and its property are subject to the laws, canons, rules and regulations of the Greek Catholic Church in union with the Holy See, whose supreme ruler is

the Pope of Rome. The issue agreed upon as the sole issue in the case and tried in the court below is "whether or not this church is a Greek Catholic Church in union with the Holy See." After hearings, during the course of which testimony covering more than 2,000 printed record pages was received, the court below found that St. John's Church was organized as and is, as appellee contended, a "United" or "Uniate" Greek Catholic Church, subject to the ecclesiastical laws, discipline and government of that church and, by the decree from which this appeal was taken, restrained appellants from intermeddling and interfering with appellee and the duly appointed members of a "Council of Church Administration" in the control and management of the property of the church in accordance therewith.

St. John's Church was organized in 1892 by a group of people who had emigrated to Lansford from a region in Europe, near the Carpathian mountains,. referred to as "Podo Karpastka Rus," and was duly incorporated in 1905. At a congregational meeting held on February 12, 1892, it was decided, as the minutes of that meeting disclose, that the deed to the real estate of the congregation should be "made out to . . . 12 elected curators in such manner that when there will be here in America a Greek Catholic Ruthenian Bishop they are to have it deeded to him." The application for charter, in language identical with that of the charter of St. Mary's Greek Catholic Church of Nesquehoning, before this Court in *Merman v. St. Mary's Greek Catholic Church,* 317 Pa. 33, states that "the subscribers, with their associates and members, *having formed* a congregation in the Borough of Lansford, Carbon County, and State of Pennsylvania, for the purpose of worshiping Almighty God according to the Divine Faith, Doctrine, discipline and usages of *the Holy United Greek Catholic Church* . . . do hereby declare, set forth and certify that the following are the purposes, objects, articles, and conditions of the said Association for and upon which they

desire to become incorporated. . . . Second. The said corporation *is formed* for the purpose of worshiping Almighty God according to the Faith, Doctrine, discipline, and usages of *the Holy United Greek Catholic Church*".[1]

In its beginning St. John's Church was a mission church under St. Mary's Greek Catholic Church of Mahoney City and the first priest to serve it was Father Augustin Laurisin, stationed at Mahoney City and one of the first Greek Catholic priests in union with Rome to be sent to this country. All the priests who have subsequently served this church, down to Rev. Morris, the present pastor, have also been Greek Catholic priests in union with Rome and all have admittedly received their faculties from authorized ecclesiastics under the

---

[1] That the term "Holy United Greek Catholic Church" aptly signifies the Greek Catholic Church united with and recognizing the ecclesiastical supremacy of the Pope of Rome, as testimony of original members of St. John's Church, testifying for appellee, establishes the term was intended to signify, rather than the "Orthodox Greek Catholic Church" or an "independent Greek Catholic church," would appear to admit of no doubt. In Vol. 6 of the Catholic Encyclopedia, page 753, it is said: "The term United Greek Church is generally used to designate all the churches of the Byzantine Rite in communion with the See of Rome." And, in more than one hundred documents, referred to by the court below, consisting of papal decrees and correspondence from 1651 to 1751, such Greek Catholics are referred to as "United," "United Greeks," and "Newly United Greeks." Moreover, this Court has expressly recognized that the term used is synonymous with "Uniate Greek Catholic Church" or "Uniat Greek Catholic Church." In *Kicinko v. Petruska,* 259 Pa. 1, the following appears, at page 4: "From the date of its organization to 1914, when a priest named Levkanich came to the congregation, the members thereof adhered to the faith and practiced the ritual of the 'United Greek Catholic Church,' or 'Uniate Greek Catholic Church,' or 'Uniat Greek Catholic Church,' which title signifies an ecclesiastical body in union with the Roman Catholic Church and acknowledging the primacy and supremacy of the pope." See also *Greek Catholic Church v. Orthodox Greek Church,* 195 Pa. 425, 431.

jurisdiction of the Holy See. Father Gabriel Martyak, who was sent to St. John's Church by the Episcopal Ordinariate of Presov, at the request of the congregation, and who served from 1895 to 1898 and again from 1908 until his death in 1934, was at the same time, from 1916 to 1924, "Administrator of the Ruthenian faithful in the United States of North America" or acting bishop of the Greek Catholic Church under the Roman See, in the United States, by appointment of the Apostolic Delegate at Washington, D. C. In 1928, the Holy See at Rome honored Father Martyak by appointing him a Prelate or Monsignor and he was installed as such in St. John's Church. All the buildings and property acquired by this church, during its existence, have been dedicated and blessed by priests and bishops under the jurisdiction of the Holy See, and since the appointment of Rev. Basil Takach as bishop, in 1924, he has officiated on at least two solemn occasions in St. John's Church, once at the installation of its pastor, Father Martyak, as a Monsignor, and again at the funeral services of Father Martyak. Financial accounts of the church which, as the learned chancellor found, were read to the congregation once monthly, during church services, and annual statements, which were read at regular annual meetings of the congregation and were approved by the congregation, show payments to the bishop of large sums of money, required to be paid by the laws of the Catholic Church, designated "Cathedraticum," "Peter's Pence," "Diocesan Collections" and "Orphans' Collections"; also that the congregation paid a substantial amount assessed against it for the building of a residence for Bishop Takach. The findings of the chancellor also establish that the services in St. John's Church have always been performed and sacraments administered strictly according to the ritual prescribed for the Greek Catholic Church united with Rome; that all priests celebrating mass in the church prayed for the Pope and the bishop then in office; that only such

books of worship were used in celebrating the divine liturgy as were approved by proper authorities of the Catholic Church; and that in the church school or catechism it has always been taught that the Pope of Rome is the visible head of the church. At a special meeting of the congregation on March 27, 1938, held following requests by the bishop for the payment of arrearages of cathedraticum, it was resolved "that the said church pay his Excellency the honorarium which is now due him from the said church" and the congregation appointed a committee to visit Bishop Takach with a proposition for the payment of the arrearages if he would grant the congregation certain privileges affecting the management of the property and finances of the church which the bishop was obliged to refuse for the reason that, as he notified the committee, under the laws of the church it was beyond his authority to grant the requests.

Most of these facts, found by the chancellor and affirmed by the court in banc, are undisputed and all are supported by an abundance of competent evidence, both direct and circumstantial. They are therefore conclusive and binding upon this Court. "No rule of practice is more frequently reiterated or more constantly adhered to by this Court than the rule that the findings of fact by a chancellor and approved by the court in banc have the force and effect of a verdict of a jury, and will not be disturbed if there is evidence to support them. . . . 'In certain stages of litigation, passing through different channels of our judicial system, juries and judges of the lower courts, as tryers of fact, must assume full responsibility in finally determining matters submitted through the evidence for their consideration, leaving to the appellate courts the duty of correcting such errors of law or procedure as may appear in the record' ": *Malanchuk v. St. Mary's Greek Catholic Church*, 336 Pa. 385, 396. Furthermore, as none of the fifty-seven findings of fact made by the court

below is specifically and separately assigned for error, they are not properly before us and their correctness must be taken as admitted; with these admissions, the only question presented is whether the findings support the decree: *Atlas Portland Cement Co. v. American Brick & Clay Co.,* 280 Pa. 449, 452; *Harrisburg Dairies v. Eisaman,* 338 Pa. 58, 64.

From the findings referred to, and others, the conclusion is irresistible that St. John's Church was organized and dedicated as and is a Greek Catholic Church united with Rome. We are of the unanimous opinion that under all the evidence in the case no other conclusion could properly have been arrived at. It follows that the control, disposition and management of the property of this church, as well as other ecclesiastical matters, are subject to and are exclusively governed by the laws, canons, rules and regulations of such church: *Canovaro v. Bros. of H. of St. Augustine,* 326 Pa. 76; Act of April 26, 1855, P. L. 328, section 7, as amended by Act of June 20, 1935, P. L. 353. A mere reading of the opinion in *Malanchuk v. St. Mary's Greek Catholic Church,* supra, will disclose that its facts are not "superbly parallel to the facts here involved," as appellants contend. There the congregation "was at no time submissive to the authority of the Uniate Greek Catholic Church" and "never organized as a member of that church family" but "was organized, incorporated, named, erected and opened for services without compliance in any respect with the requirements of the Roman Catholic Church prescribing what must be done to create a Uniate Greek Catholic Church united with the Church of Rome."

The complaint that the learned chancellor failed to grant appellants a "full, adequate and impartial hearing" merits no discussion. Suffice it to say that the record discloses no basis whatever for this unjustifiable charge. Appellants also contend that the final decree is inadequate for the reason that the court in banc did

not specifically answer exceptions filed by them to the refusal of the chancellor to find certain facts, in accordance with their requests for findings, pertaining to alleged omissions on the part of the congregation of St. John's Church completely to adhere to the requirements of the Greek Catholic Church united with Rome. An examination of the exceptions discloses that there is no complaint in any of them that the chancellor's adjudication, which embraces fifty-seven numbered findings of fact and twelve conclusions of law and discusses fully all the important questions of fact and law involved, failed to make substantial disposition of requests for findings and conclusions; consequently specific answers to these exceptions were not required. See Equity Rule 71. In any event, that there have been omissions on the part of the congregation from time to time to follow strictly, in every particular, all the provisions of the church laws applicable to the Greek Catholic Church united with Rome, without objection by the authorities of the church, is not conclusive on the question of its submission or non-submission to such authorities, as appellants apparently contend, and manifestly could have no effect whatever to change the original status of the corporation.

After a careful review of the voluminous record in this case, we are of one mind that it is wholly free of reversible error and that none of the assignments of error can be sustained.

Decree affirmed at appellants' cost.