## Commonwealth ex rel. Barker *v.* Barker, Appellant.

264

Argued November 20, 1946. Before Baldrige, P. J., Rhodes, Hirt, Reno, Dithrich, Ross and Arnold, JJ.

*William H. Doerr, Jr.,* with him *H. E. Potter* and *Frank A. Moorshead,* for appellant.

*Vincent P. Desmond,* for appellee.

Opinion by Ross, J., January 17, 1947:

This is an appeal by a husband from the refusal of the court below to vacate an order for the support of a wife and involves the validity of another Nevada divorce.

The parties, who were married on October 20, 1920, were residents of Delaware County until 1939, when the husband left his wife and two children and went to Philadelphia to live. On August 5, 1939, the Court of Quarter Sessions of Delaware County ordered the husband to pay $100 every two weeks for the support of his family. On June 30, 1944, the husband petitioned for a reduction, and after hearing, it was reduced to $45 a week. On March 29, 1945, when there were rumors that the husband was going to leave his job and residence in Philadelphia, he was called before the court below and, after hearing, was required to post $2000 cash security for compliance with the existing order of court. At this hearing he testified that he planned to take from one to three months off from his employment and that he did not intend to leave Philadelphia except possibly to spend a few weeks at the seashore. However, on April 6 he left for Reno, Nevada, and arrived there on April 9.

On January 11, 1946, appellant filed a petition to vacate the order on the ground that on July 18, 1945 he had been granted an absolute divorce from the relatrix in Nevada. After hearing, the lower court refused to vacate the order on the ground that the Nevada divorce "is not such a decree as to be entitled to full faith and credit in this Commonwealth under the Federal Constitution . . .".

Under the Federal Constitution we are required to give full faith and credit to the judgments of a sister state. However, we have a corollary duty—equally as great—to protect our citizens from an abuse of that constitutional provision by inquiring carefully and thoroughly into the jurisdiction of the courts of a sister state to enter judgments affecting the rights of our citizens. The law governing the validity of foreign divorces when they are attacked in the courts of this state has been so ably and recently (1945) reviewed by Judge RENO in *Commonwealth ex rel. Meth v. Meth,* 156 Pa. Superior

Ct. 632, 41 A. 2d 752, that it is not necessary to discuss it further in this opinion, and we will confine ourselves to determining whether the evidence in the record, with the inferences therefrom, establishes that appellant was a bona fide domiciliary of Nevada at the time of the proceedings resulting in the decree for which he contends full faith and credit should be given by the courts of this state.

According to the testimony of the appellant, he had been employed by the Atlantic Refining Company for 28 years and at the time he voluntarily left its employment on April 6, 1945, was chief accountant at a salary of approximately $6500 a year. He testified that he had told the court on March 29, when he was last before it relative to the existing support order, that it was his intention to stay in Philadelphia but that after the court ordered him to deposit $2000 as cash security he changed his mind, and on April 6 left Philadelphia, taking his personal effects with him and went to Reno, Nevada "purposely to establish a residence in Reno". He registered immediately with the United States Employment Service and through it obtained employment with Montgomery Ward Company on May 29 at $35 a week, and worked until October 10, when he was replaced by a returning veteran. After being in Reno the required six weeks, he filed his action in divorce and the divorce was granted on July 18. He admitted that he had been attentive to one Una R. Tompkins prior to his leaving Philadelphia and that he and Miss Tompkins, who arrived in Reno on July 29, were married there on July 30. He testified that after he lost his job at Montgomery Ward Company, he was unable to get other employment and left Reno the last week of October and went to California, where he likewise was unsuccessful in securing work, and then came back to Philadelphia to visit his father "as well as to get this order abated". He testified that at one time he had offered the relatrix $5000 to

settle their domestic affairs, which she refused, and that he had tried unsuccessfully in 1941 in Philadelphia to secure a divorce from her. He testified that at the time of the hearing he had a bank account in Reno, that he filed his income tax return for 1945 in Nevada and that on October 9 he registered in Reno to vote after the required six months' residence. .

The fact that the appellant remained in Reno for six months—approximately three months after the divorce decree was entered—is not controlling but is a factor to be considered for any light it may shed upon his domiciliary intent at the time the Nevada court assumed jurisdiction. It is significant to note that he became unemployed the *day* after he *registered* to vote. The inference seems clear that he remained in Reno long enough to qualify to register as a voter and thus be able to secure an official record of six months' residence for use as evidence—as it was used—in his subsequent effort to secure a vacation of the support order involved in this appeal.

In this case, we have the following summary of facts: a separation after 19 years of marriage, an order for support, another woman, an unsuccessful attempt to secure a divorce, a further hearing on the support order, a requirement for cash bond, a sudden decision to leave employment after 28 years, a trip to Reno, institution of divorce proceedings immediately after the required six weeks' residence, divorce decree entered July 18, arrival of the other woman in Reno eleven days later and a marriage ceremony the following day. The conclusion seems inescapable that the appellant went to Reno not to establish a bona fide *domicile* but to establish a *residence* so that he might secure in Nevada that which had been denied him in Pennsylvania—a severance of the marriage ties and a release from his obligation to support his wife.

At the hearing the appellant offered in evidence a certified copy of the Nevada divorce decree which stated,

inter alia, that appellant herein ". . . is now and for more than six weeks next preceding the commencement of this action has been an actual and bona fide resident of the State of Nevada, domiciled therein . . . with intent to remain indefinitely and make Nevada his home". This decree with a recital of its jurisdictional facts is prima facie valid and the burden was on the relatrix to show by a preponderance of evidence that jurisdiction was in fact lacking (*Commonwealth ex rel. Cronhardt v. Cronhardt,* 127 Pa. Superior Ct. 501, 193 A. 484), and in our opinion that burden has been met.

On April 12, 1946, after hearing on the petition to vacate but before decision thereon, the appellant petitioned the court below to reduce the order for support of relatrix and the parties' minor daughter which had been in effect since June 24, 1944, from $45 a week to $10 a week, to be paid to the relatrix "for the education, maintenance and support of their minor daughter". After hearing, the court below included in the order refusing to vacate on the ground of the Nevada divorce the following: ". . . said order is hereby reduced to the sum of twenty-five ($25.00) dollars per week until further order of the Court; and finally, that said defendant be, and he is hereby, released from the County Jail, he to enter into his own recognizance in the sum of fifteen hundred ($1500.00) dollars, after he shall have plead 'Guilty' generally to the Indictment in said case". The petition to reduce was based (1) upon the Nevada divorce, which needs no further discussion and (2) inability to pay. At the hearing the appellant testified that he had been unemployed since October 1945 and although he had sought employment, had been unable to secure it. He admitted, however, that he had not sought employment from the Atlantic Refining Company, which he voluntarily left after 28 years' employment.

In determining the amount the appellant should pay for the support of his wife and child, the court could

consider the earning power of the appellant as well as the attendant circumstances in this case, including the fact that while the order was in effect appellant voluntarily left a $6500 a year position. *Commonwealth ex rel. Jamison v. Jamison,* 149 Pa. Superior Ct. 504, 27 A. 2d 535; *Commonwealth ex rel. Wieczorkowski v. Wieczorkowski,* 155 Pa. Superior Ct. 517, 38 A. 2d 347. Orders in nonsupport cases are not regarded as final, inasmuch as they may be increased, reduced, or vacated where the financial condition of the parties changes, or where other proper reasons are shown. In a case of this nature we do not interfere with the determination of the court below unless there is a clear abuse of discretion (*Commonwealth ex rel. Crandall v. Crandall,* 145 Pa. Superior Ct. 359, 21 A. 2d 236) and in the record before us we find no such abuse of discretion.

That part of the lower court's order ". . . after he shall plead 'guilty' generally to the Indictment" is without legal authority and is stricken from the order. *Commonwealth v. Widmeyer,* 149 Pa. Superior Ct. 91, 26 A. 2d 125.

Order affirmed.