Reimer, Appellant, v. Reimer.

510

Argued March 10, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Webster S. Achey,* for appellant.

No one appeared or filed a brief for appellee.

OPINION BY ROSS, J., April 16, 1947:

The libellant husband and respondent were married in Doylestown on March 7, 1942, and immediately after marriage made their home with the libellant's mother in Doylestown. On September 4, 1942, the libellant was drafted into military service and after short service in Texas and Louisiana, was sent overseas. The respondent continued to live at her mother-in-law's home in Doylestown until May of 1943, when she left and did not return, but went to live with another man, who bought her clothes and paid her bills. In August 1945, the libellant was discharged from the Army and, although he saw

his wife on several occasions and asked her to return and live with him, she refused to do so.

The appellant husband filed a libel in divorce on January 14, 1946. A hearing was held before a master, who recommended a divorce on the ground of desertion. However, the court below dismissed the libel on the ground that the desertion did not take place until the libellant returned home in September 1945 after his discharge from the service and, therefore, the libel was premature. The libellant appealed to this court from the decree of dismissal of the libel.

The question presented is whether, under all the circumstances in this case, the acts and declarations of the wife constitute desertion, and whether the statutory period of absence necessary to establish desertion was established.

The statute (Act of May 2, 1929, P. L. 1237, section 10 as amended, 23 PS 10) provides that an innocent and injured spouse may secure a divorce whenever it shall be judged that the other spouse "shall have committed wilful and malicious desertion, and absence from the habitation of the innocent and injured spouse, without a reasonable cause, for and during the term and space of two years . . .".

In this case, the respondent left the "habitation" of the libellant in May 1943 and never returned to it. At that time she wrote to her husband overseas, stating that she was "through" with him; that their "married life was washed up"; that she "didn't care whether I came back or not and didn't want to bother with me". She also gave her wedding and engagement rings to libellant's mother, stating to her, "I don't want his rings and I don't want no part of him". The record shows that the respondent is guilty of wilful and malicious desertion from her husband's home for the statutory period. Instead of keeping the home fires burning and maintaining the matrimonial habitation while her soldier husband was fighting for his country, the respondent—*without*

*cause* other than her personal and illicit desires—chose to abandon that habitation. Furthermore, her conduct since the appellant's return reveals a persistent and unbroken intention to desert him. The law allowed her two years as a locus penitentiæ, even if she went away originally with a view not to return again. *Boyd's Appeal,* 38 Pa. 241; *Neagley v. Neagley,* 59 Pa. Superior Ct. 565. However, it is well settled that to bar the running of the term against the offending party, an offer of reconciliation or an offer to return to the injured party must be made in good faith with the desire that it be accepted. *Gordon v. Gordon,* 208 Pa. 186, 57 A. 525; *Helm v. Helm,* 143 Pa. Superior Ct. 22, 17 A. 2d 758; *Carr v. Carr,* 160 Pa. Superior Ct. 124, 50 A. 2d 517. Here, the respondent made no offer to return but on the contrary refused libellant's requests to do so.

The respondent was not absolved of her matrimonial wrong by the fact that her husband was temporarily away from home. His absence was required by the exigencies of war and would not be a severance or suspension of an existing desertion nor would it toll the beginning or the running of the required statutory period. In *Shortley v. Shortley,* 68 Pittsburgh Legal Journal 238, the libellant, an officer in the United States Army, while serving in France, received a letter from his wife stating that she was through with him forever. Upon return to his home in Pittsburgh after the war, he attempted to communicate with his wife but she refused to see or talk with him. The court held that this was wilful and malicious desertion and that the time the libellant was engaged in the service could be computed in making up the statutory period of two years. In *Herbertson v. Herbertson,* 29 District Reports 418, it was held that the absence of the libellant overseas with the armed forces did not toll a desertion which had previously begun.

In this case, the lower court dismissed the libel on the theory that the "marital home or common domicile of the parties" ceased to exist when the husband was

inducted into service and was required to leave the habitation, but this position is unsound.

Every person has at all times one domicile, and no person has more than one domicile at a time. Restatement of Conflict of Laws, sec. 11. Domicile may be that of origin or of choice. A domicile once acquired is presumed to continue despite physical absence, and is not lost until a new domicile is established. *Price v. Price,* 156 Pa. 617, 27 A. 291; *Dorrance's Estate,* 309 Pa. 151, 163 A. 303. Only when a new intention arises to establish a domicile elsewhere does the first element of change of domicile appear. This element alone is insufficient to effect the legal change. There must exist with it the physical presence at the new domicile before it may be legally acquired. *Davis v. Davis,* 91 Pa. Superior Ct. 354. A domicile once established continues until it is superseded by a new domicile. Restatement of Conflict of Laws, sec. 23. Here it was testified that the couple had lived together as husband and wife at his mother's home and nowhere else until the libellant went into the Army. His domicile was at that place during the entire time he was away from it. It could have been nowhere else, since he had not the intent coupled with physical abandonment to change it.

In *Nixon v. Nixon,* 329 Pa. 256, 198 A. 154, it was held that the libellant was a bona fide resident of Pennsylvania at the time his suit for divorce was brought, although he had been physically out of the state for the preceding twenty years except for a few brief visits to his mother. In that case the libellant was born in Gettysburg in 1895 and lived there until he was appointed to the United States Military Academy at West Point in 1915. After his graduation in 1918, he was continuously in the service of the United States Army, travelling from place to place in the performance of his duties. In 1932 while attached to the Ordnance Department of the Army in Washington, D. C., he purchased a house there, in accordance with the custom

of many government employes who did so instead of renting houses in order to avoid exorbitant rentals. He gave his Washington home as his residence in applying for automobile licenses and paid personal property taxes in the District of Columbia, as required by statute imposing the tax on all persons "maintaining a place of abode" there, but recognizing that such persons may have a "legal residence" elsewhere. After his graduation in 1918 he never actually resided in Gettysburg, and made very few, brief visits to his mother there. His mother still lived in Gettysburg and there he kept some of his personal belongings. He testified that he never established a residence elsewhere and that although he had never voted, he never registered elsewhere to vote. He annually gave his residence to the War Department as Gettysburg. On these facts Chief Justice KEPHART said: "This, being uncontradicted, adequately supported the master's conclusion that appellant's bona fide residence was Gettysburg. The fact that appellant spent much time out of the state did not under the circumstances preclude such a finding . . . It cannot be doubted that the performance of duties by an army officer in the national defense justifies absence from the state where residence is claimed . . . It would be most unwise to hold that if a citizen enters into a government service that has no fixed place of employment, he is to be deprived of his rights as a civilian under the laws of the state of his origin." In *Commonwealth v. Shimpeno*, 160 Pa. Superior Ct. 104, 50 A. 2d 39, where we held that a defendant's absence in military service did not suspend the running of the statute of limitations in a criminal proceeding, Judge RHODES stated: "We are of the opinion that defendant was 'an inhabitant of this State, or usual resident therein', during the period of his military service notwithstanding his absence from the Commonwealth . . . The place of the performance of his military duties did not affect defendant's residence in the Commonwealth or deprive him of any advantage of residence therein."

We are of the opinion that in this case the libellant established with sufficient certainty each and every one of the necessary statutory ingredients of the offense, i. e., marriage, abandonment of the matrimonial habitation, the intention of the respondent not to resume cohabitation, want of libellant's consent to separation, absence of justification, and two years' continuance of the separation. The libellant is, therefore, entitled to a divorce on the ground of wilful and malicious desertion.

The decree dismissing the libel is reversed, the libel is reinstated and the record is remitted to the court below with direction to enter a decree of absolute divorce.