Smith, Appellant, *v.* Smith.

2

Argued November 15, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Philip S. Moyer*, with him *Joseph P. McKeehan*, for appellant.

*Robert V. Smith,* with him *John H. Fertig, David Dunlap, Robert L. Myers, Jr., Robert P. Smith, Fertig & Dunlap, Myers & Myers* and *Smith, Ristig & Smith,* for appellee.

OPINION BY MR. JUSTICE DREW, January 16, 1950:

Bernice G. Smith, plaintiff and her husband, Luther B. Smith, defendant, have been litigating their marital difficulties for over three years in the courts of both Florida and Pennsylvania, he seeking a Florida divorce and she attempting in Pennsylvania to enjoin the Florida proceedings. Her bill in equity having been dismissed by the Court of Common Pleas of Cumberland County, Pennsylvania on the ground that defendant is no longer domiciled in this Commonwealth, plaintiff brings this appeal.

Plaintiff and defendant were married on December 26, 1916, and lived together at various places in York and Cumberland Counties until May 24, 1945, their last mutual address being 28 North 23rd Street, Camp Hill, Cumberland County where plaintiff still resides. On August 22, 1946, defendant instituted a divorce action in Dade County, Florida. On September 9, 1946, plaintiff filed a bill in equity in Cumberland County to enjoin the Florida action and on that bill a preliminary injunction was granted the same day. Defendant then moved the Florida court to dismiss the divorce action on November 9, 1946, and ten days later sought to have the preliminary injunction dissolved and that bill dismissed. The learned court below dissolved the injunction but retained jurisdiction of the bill. Thereafter, on May 2, 1947, defendant sought a Florida declaratory judgment that he was a resident of and domiciled in Florida. Plaintiff in turn filed a supplemental bill in Cumberland County to enjoin that proceeding and a preliminary injunction to that effect was granted on

June 24, 1947. On July 3, 1948, defendant again began divorce proceedings in Dade County, Florida and again a preliminary injunction was granted restraining defendant from further prosecution of that divorce action. The injunction was continued until final hearing after which the bill was dismissed and this appeal followed.

Under *Williams v. North Carolina (No. 1)*, 317 U. S. 287, a divorce granted by a court of the bona fide domicile of either spouse is valid and must be given full faith and credit. The only ground upon which a divorce decree of another jurisdiction may be attacked is that it was not the bona fide domicile of either spouse: *Williams v. North Carolina*, 325 U. S. 226; *Commonwealth ex rel. v. Esenwein*, 348 Pa. 455, 35 A. 2d 335. Since equity has no power to restrain a person from obtaining a lawful divorce, it follows that an injunction may only be granted where the spouse has not established a bona fide domicile in the state in which the divorce is sought. Thus the sole issue here is whether defendant has established such a domicile in Florida.

It is not disputed that defendant was for some years a Pennsylvania domiciliary. That domicile having been shown to exist, it is presumed to continue until another domicile is affirmatively proven: *Pusey's Estate*, 321 Pa. 248, 184 A. 844; *Price v. Price*, 156 Pa. 617, 27 A. 291. The burden is on the one alleging a change of domicile to prove residence in a new locality and the intention to make that his permanent home: *Barclay's Estate*, 259 Pa. 401, 404, 103 A. 274; *Chidester v. Chidester*, 163 Pa. Superior Ct. 194, 196, 60 A. 2d 574; *Reimer v. Reimer*, 160 Pa. Superior Ct. 509, 513, 52 A. 2d 357; *Alburger v. Alburger*, 138 Pa. Superior Ct. 339, 10 A. 2d 888.

Plaintiff argues that in view of those rules the chancellor could not dismiss the bill unless he found defendant to be domiciled in Florida and since the only finding

was that he was not a Pennsylvania domiciliary, the findings do not support the decree and this Court must, therefore, reverse that decree. Such an argument overlooks what we said in *Dorrance's Estate,* 309 Pa. 151, 156, 163 A. 303, that ". . . where a finding of fact is simply a deduction from other facts reported by the tribunal under review, and the ultimate fact in question is purely the result of reasoning, we are competent to judge of its correctness and will draw our own conclusions from the facts as reported." Defendant's domicile being merely a conclusion to be drawn from the chancellor's findings, this Court will consider and decide that question.

The evidence amply supports the chancellor's findings and those findings make it clear that defendant is a Florida domiciliary. As early as May 24, 1945, defendant stated that he intended to spend less and less time at Camp Hill, Pennsylvania. Thereafter, he went to Florida and declared that he would make his home there. In June 1946, he rented a house in the Village of North Bay Island where he lived until July, 1947, at which time he purchased a large home for $82,500 in Miami Beach. Since 1947 he has been listed on the tax rolls in Camp Hill as a non-resident taxpayer and has paid Florida personal and real property taxes as a resident of that State. Since 1946 defendant has filed his federal income tax return with the Collector of Internal Revenue in Florida in compliance with 26 U. S. C. A., Section 53(b) which requires that those returns be filed at the *legal* residence of the taxpayer. Defendant also had his name removed from the voting registry in Camp Hill in January of 1947, and a short time later registered as a voter in Dade County, Florida. His automobile driver's license, passport and student pilot certificate have all shown his Florida address to be his home.

In addition he has resigned from the West Shore Country Club at Camp Hill, a Shrine Organization in

Harrisburg and the Harrisburg Lodge of Elks. He has joined the Miami Elks Lodge and the LaGorce Country Club in Miami Beach. He has opened his personal bank account in Miami. He is contacted by business associates and entertains all his guests, both personal and business, in Miami. He has acquired numerous business interests there but still maintains business interests in seven other states, including Pennsylvania. He spends about one-half of his time on business trips to those states. The balance of his time is spent at his Florida home. While he lived at North Bay Island he served as police commissioner for that village.

In view of that evidence it is impossible to conceive of what more defendant could have done to establish himself as a Florida domiciliary. He has severed all Pennsylvania ties and established himself anew in Florida. His written statements on official documents, his oral declarations and his acts all clearly show that his Florida residence is his legal domicile. His residence and intent having been overwhelmingly established, he has rebutted the presumption of continuing domicile in Pennsylvania.

Plaintiff contends that defendant, in moving to Florida was motivated solely by the desire to obtain a divorce and bases that contention on the undisputed evidence of his adultery. It is true that continuous adultery with one woman tends to show that he wanted a divorce in order to marry that woman: *Com. ex rel. Barker v. Barker,* 160 Pa. Superior Ct. 263, 50 A. 2d 739. And since motive may reflect on a person's intent to change domicile (*Commonwealth ex rel. Meth v. Meth,* 156 Pa. Superior Ct. 632, 41 A. 2d 752), his evidence of that intent must be subjected to close and careful scrutiny. Even after such an examination we have no difficulty in finding that whatever may have been defendant's motive in moving to Florida he has, on this record, established his intent to make that State his domicile.

Plaintiff relies heavily on *Dorrance's Estate,* **supra,** to show that the acts and declarations of defendant were not sufficient, in view of his motive, to establish his intent. In that case, Dorrance sought to maintain a New Jersey residence to avoid taxes. There, it was shown and not seriously disputed that Dorrance spent most of his time in his Pennsylvania home and did almost all of his entertaining there. He paid only occasional visits to his New Jersey residence and then only for a day or two at a time. In addition the New Jersey house was small in comparison with the size of his Pennsylvania estate. Certainly in those circumstances and considering his motive, it could not be said that Dorrance was a bona fide domiciliary of New Jersey. Here, on the other hand, defendant spends all of his time in Florida except for time spent on necessary business trips and in fact conducts much of his business there. His Florida residence is a large one costing $82,500 and while the size and value of his Camp Hill house is not in evidence, he has shown his abandonment of that property by tendering a deed to it to plaintiff. The *Dorrance* case is readily distinguishable from the facts of this case and accordingly is not here controlling.

Plaintiff also urges that a divorce will work great hardships on her by depriving her of her right to support and her dower interests and for that reason the injunction should be granted. To so hold, would require us to overlook the decisions of the United States Supreme Court, As we stated above, the two *Williams* cases limit our inquiry to the issue of domicile. By no stretch of the imagination can defendant's domicile be said to depend on any equities which may exist in favor of plaintiff. Furthermore, plaintiff's own witness testified that defendant offered plaintiff a settlement of $400,000 to be paid over a period of twenty years. That sum represented one-half of their accumulated wealth. It was

also shown, as previously stated, that defendant has tendered to plaintiff a deed to their Camp Hill residence. When those factors are considered, the hardships of which plaintiff complains are completely negatived.

A further contention made by plaintiff is that the court en banc violated Equity Rule 71[1] by failing to make certain requested findings which plaintiff avers were not substantially disposed of by the chancellor in his adjudication. Equity Rule 71 is unambiguous and must be complied with (*B. & I. Co. v. Johnston & Harder, Inc., et al.*, 340 Pa. 253, 16 A. 2d 444) but a study of the adjudication makes it clear that there is here no reason to invoke that rule. Many of the requests, dealing with defendant's business interests, were disposed of by findings made by the chancellor. That these findings were not as favorable to plaintiff as she desired is certainly no grounds for complaining that the chancellor did not make "substantial disposition" of her requests. The remaining requests, concerning defendant's motive, were discussed in the adjudication and the reasons for refusing the requests fully set forth there. Her requests were all substantially disposed of and Rule 71 is, therefore, not here involved. Moreover, plaintiff's exceptions were to the chancellor's *failure to find* the requested facts and *not to his failure to make substantial disposition* of those requests. As we said in *Morris v. Featro*, 340 Pa. 354, 361 17 A. 2d 403: "An examination of the exceptions discloses that there is no complaint in any of them that the chancellor's adjudication . . . failed to make substantial disposition of requests for findings and conclusions; consequently specific answers to these exceptions were not required."

---

[1] The pertinent part of that Rule reads as follows: ". . . exceptions which aver that the chancellor's adjudication fails to make substantial disposition of requests for findings of fact must be answered specifically by findings, refusing to find or qualifying the facts alleged, and not by a simple refusal of the request."

Plaintiff also complains that defendant's declarations of intent to stay in Florida were self-serving and should have been excluded. Statements tending to show intent are admissible in evidence although self-serving: *Ickes v. Ickes*, 237 Pa. 582, 591, 85 A. 885. See also Wigmore on Evidence (3rd Ed.), Vol. VI, Section 1727. But such oral declarations are of little probative value without corroboration. For that reason evidence of a person's acts and writings are given greater weight than his declarations: *Pusey's Estate*, supra. In the present case defendant's acts as well as his written statements on official and semi-official documents, such as tax returns, driver's license and voting registries, afford ample corroboration of his oral declarations.

Plaintiff's last objection is to the testimony of defendant's personal pilot as to the amount of time defendant spent in Florida. This objection is based on the theory that the pilot's personal log book would be the best evidence. The log to which the pilot referred was not an official flight log but merely his own personal memorandum and as such, could only have been used to refresh his recollection (See Henry on Pennsylvania Trial Evidence, Section 491). It is apparent from reading his testimony that he was testifying to matters within his personal knowledge based on his own observation of defendant's habits. He did not purport to state the contents of the writing.

Defendant having established the fact that he is a bona fide Florida domiciliary, the courts of this Commonwealth have no right to enjoin his obtaining a divorce there. The bill was, therefore, properly dismissed.

Decree affirmed. Costs to be paid by appellant.

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

I do not concede that "defendant established the fact that he is a *bona fide* Florida domiciliary". Curiously

enough, while his true motives are sharply in issue, he never testified in court even by deposition. He relies upon what he is alleged to have told others who, in turn, testified as to defendant's intent. And all of this testimony, so injected, as to his Florida domicile consisted of self-serving declarations and acts manifestly set up to give semblance of verity to his claim of changed domicile. Voting, paying taxes, joining clubs, etc., were all matters within defendant's exclusive control. I think we should give vital effect to the majority's observation that ". . . since motive may reflect on a person's intent to change domicile . . . evidence of that intent must be subjected to close and careful scrutiny". In truth and in fact the testimony adduced by the defendant discloses that his chief interest in trying to obtain a new domicile in a foreign jurisdiction was that he might be able thereby to secure a divorce for which he had no grounds in the marital domicile. The question of domicile was but incidental to his main purpose. In my opinion, defendant's pretended change of domicile from Pennsylvania to Florida, in the circumstances of this case, constitutes a fraud and a sham. It appears of record without contradiction from the defendant that he said that if he was prevented from going ahead with the Florida divorce proceedings, he would go into another State and begin another action.

Of course, I do not dispute that a decree of divorce granted by a State where the complaining party has recently acquired a domicile, if procedurally valid according to the law of the jurisdiction, must be given full faith and credit throughout the other forty-seven States: *Williams v. North Carolina,* 317 U. S. 287; *Williams v. North Carolina,* 325 U. S. 226; *Esenwein v. Commonwealth,* 325 U. S. 279. The *Williams* cases and others of like import are not germane to the point on which this Pennsylvania equity suit should turn. To

my mind, the ruling of the majority in the instant case mistakenly extends the effect of the United States Supreme Court cases on divorce far beyond their intendment.

I would reverse for want of competent evidence to support any finding of the defendant's *bona fide* change of his established Pennsylvania domicile.

Mr. Justice JONES joins in this dissent.