### GERMAN EVANGELICAL CONGREGATION OF LAFAYETTE v. H. PRESSLER.

The statutes and regulations which corporations enact for their police and discipline, are obligatory upon all their respective members, who are bound to obey them, provided such statutes contain nothing contrary to the laws of public liberty, or to the interest of others.

There is one principle common to the trustees of all incorporated churches. They have the possession and the custody of the temporalities of the church. They are considered *virtute officii* entitled to the possession, and are lawfully seized of the grounds, buildings, and other property belonging to the church. Though they hold the church property in trust for the congregation, still, it is their possession, and the courts are bound to protect them against every irregular and unlawful intrusion, made against their will, whether by the pastor, members of the congregation, or by strangers.

APPEAL from the Sixth District Court of New Orleans, *Howell, J.* E. Hiestand and E. & G. Schmidt for plaintiff. Durant & Hornor for defendant.

ILSLEY, J. This suit was instituted in the year 1858, by the plaintiffs, a religious congregation, against the pastor, to have him enjoined from acting as minister or parson of the congregation, and from disturbing the plaintiffs in the peaceable enjoyment of its property and rights, as described in their petition, and for a perpetuation of the injunction.

The defendant urged several exceptions to the plaintiffs' right of action; but, if they were overruled, then, he pleaded the general issue.

There is no means of ascertaining from the record, in the informal manner in which it is presented, what disposition was made of these exceptions; and, as the case was examined on its merits, we must presume they were waived.

During the progress of the proceedings in the lower court, a rule was taken by the defendant on the plaintiff, to show cause why the suit pending should not be discontinued, it having, at a general meeting of the

G. E CONG'TION
*v.*
PRESSLER.

congregation, duly convened and held, been resolved that the suit was unauthorized and disapproved by the council, and that it was ordered, thereby, that the suit should be discontinued.

The suit, after trial of the rule, was ordered by the court below to be discontinued, but this judgment was reversed on appeal.

It is to be greatly deplored that in controversies like this one, exposing bickerings in religious communities, which should not occasion undue publicity, it should be found at any time necessary to invoke the interference of judicial tribunals. When discord usurps, in congregations, the seat of harmony, how wise and salutary is the admonition of St. Paul, in his Epistle to the Corinthians, to his brethren in the faith, should dissentions prevail among them to refrain from going to law with one another !

This case is before us, and we shall proceed to examine it.

It seems that the defendant was the pastor of the German Evangelical Congregation of Lafayette. He was, in that capacity, presumed, of course, to be conusant of the statutes and regulations of the corporation, and bound to obey them (Article 436 Civil Code); the more particularly as he was an advisory member of the church council, representing, for that purpose, the congregation.

Charges of a compromitting nature having been preferred by the counsel against the pastor, it was, by a formal resolution, determined that his functions as pastor should be suspended for the space of six months, from and after the date of the resolution, and that he should not perform services in the name of the church until all matters pending were disposed of.

This resolution, unanimously adopted, was in due time notified to him, as shown at page 34 of the transcript; but he disregarded it; and, although he did not actually participate in breaking open the church door, which had been twice closed by the council, he persisted, on both occasions, in holding divine service in the church.

See the testimony of *Hackbury, Fabean, Wurm* and *P. Miller.*

As pastor of the congregation, he was earnestly directed by its regulations to act as a good householder, and to bring forth from the rich treasury of the Gospel, things old and new, which was incompatible with the indulging in offensive and derogatory invectives, whilst officiating as clergyman, against the church council. One witness says that the pastor, Pressler, openly accused the trustees of being dishonest men ; and another witness attributes to him, the assertion in church, that he would bring the character of the trustees down, and if he could not bring their character down he would bring their property down. I will not only, said he, deprive them of their good name, but also of their fortune. See the testimony of *H. P. Waller* and *Fabean.*

Such a course as this was not the one to be resorted to, to heal dissentions in the congregation ; but was, on the contrary, pursued by him, calculated to widen the breach which, unfortunately, there existed between the two parties in the congregation, of which the witness, *Jacob Alexander*, makes mention.

It was through the instrumentality of its pastor that the house became divided against itself. Instead of setting, as the teacher of the doctrines

of Christianity, an example of decorum and obedience to his revolting flock, he seemed intent on sowing among them the seeds of discord; and the consequence was, the enacting of such a scene as that described by the witness, *Jacob Alexander*. He says: "I went there (to the church) two or three Sundays after; I cannot tell exactly when. Kaiser, the President, and the trustees, called for Mr. Wallace to preach. There were two parties, and each wanted their own preacher. When Mr. Wallace came they commenced to fight; some give him a slap, and others a kick, and so on. Before the church was closed they had a little revolt; then Mr. Pressler came to me, and told me there is a little row between some of the members of the church and the ministers; there is a paper; it is to keep the peace in the congregation; and he asked me to sign it, and I did so."

The defendant was using every means to oust the old board of trustees, some of whom, at his instance, were arrested and taken to prison; but it was maintained in its functions by the decree of the court in the *quo warranto* suit of *Kaiser* v. *St. Paul*.

It was the duty of the council (chapter 2, § 4) to keep employed *a good preacher;* to declare the pastorship vacant in a certain case (chapter 11, § 4); and, in case of misunderstandings between the pastor and church council, to take steps to supply a successor to the last incumbent. (Chap. 3, § 5, See Resolutions of 21st July and 2d August, 1858; also, Arts. 429 and 430, Civil Code.)

The sentence of an ecclesiastical, a classic or a Synod (the mode for removing such an officer of the corporation, adopted in some of the German or Dutch Reformed churches), is not needed in the German Evangelical Congregation. Its power to suspend or remove its minister is derived from its by-laws, in accordance with its charter; and the mode resorted to by it was a lawful means of attaining the end of keeping a good preacher employed.

The pastor was appointed during the pleasure of the council, and very little formality was needed, and no notice was required to suspend or remove him. See chapter 11, section 7. p. 251, Angell on Corporations.

There is one principle common to the trustees of all incorporated churches. They have the possession and the custody of the temporalities of the church. They are considered *virtute officii* entitled to the possession, and are lawfully seized of the grounds, buildings and other property belonging to the church. Though they hold the church property in trust for the congregation, still, it is their possession, and the courts are bound to protect them against every irregular and unlawful intrusion made against their will, whether by the pastor, members of the congregation, or by strangers.

This is the doctrine held in the somewhat analogous case of *The People* v. *Runkle, pastor*, vol. 9 Johns. N. Y. Rep. It is that held in the *Church of St. Francis* v. *Martin*, 4 Rob. p. 62.

The plaintiffs ask for the equitable interference of this court to sustain them in their lawful rights and privileges, which, from the evidence adduced, they have the legal right to claim. See, in Tothill, case of *Town of Yarmouth* v. *Bishop of Norwich*, 66.

The judgment of the lower court must be reversed.

G. E CONG'TION
v.
PRESSLER.

It is therefore ordered, adjudged and decreed, that the judgment of the lower court be annulled, avoided and reversed, and proceeding to give such judgment as should have been rendered by the court below, it is ordered, adjudged and decreed, that judgment be and it is hereby rendered in favor of the plaintiffs, the German Evangelical Congregation of Lafayette, and against the defendant, Hermann Pressler, and that the said defendant be perpetually enjoined and inhibited from acting (under his appointment previous to the inception of this suit) as minister or pastor of the German Evangelical Congregation of Lafayette, and from disturbing the plaintiffs in the peaceable possession and enjoyment of the church property, as described in the petition.

It is further ordered, that the costs in both courts be paid by the defendant and appellee.

HOWELL, J., recused.