Mr. Justice BRADLEY
delivered the opinion of the court.
There is considerable analogy between dunnage and ballast. The latter is used for trimming the ship, and bringing it down to a draft of water proper and safe for sailing. Dunnage is placed under the cargo to keep it from being wetted by water getting into the hold, or between the different parcels to keep them from bruising and injuring each other. Webster’s definition of dunnage is “fagots, boughs, or loose materials of any kind, laid on the bottom of a ship to raise heavy goods above the bottom, to prevent injury by water in the hold; also, loose articles of merchandise wedged between parts of the cargo to prevent rubbing, and to hold them steady.” Lord Tenterden says: “It is, in all cases, the duty of the master to provide ropes, &c., proper for the actual reception of the goods in the ship. . . . The ship must also be furnished with proper dunnage (pieces of wood placed against the sides and bottom of the hold) to preserve the cargo from the effects of leakage, according to its nature and quality.”*
It seems to be conceded by the plaintiffs that if the cannel coal can be regarded as dunnage, there was no breach of the warranty. In other words, it is conceded that when the assured warranted “ not to load more than her registered tonnage,” ballast and dunnage were not included in the warranty. And it is not pretended that the cannel coal used on this occasion was more than was proper for dunnage. Had some useless articles been employed for that purpose, such as chips or blocks of wood, though weighing precisely what this coal weighed, and had no freight been paid for it, the insurance company could not have complained.
It is the master’s duty to provide both ballast and dunnage when necessary for the safe and proper transportation of his *675 cargo. And it has been held that, in selecting materials for these purposes, even when he has chartered the entire capacity of his ship for articles which require ballast or dunnage, he is not precluded from taking articles on which he can realize freight. Thus, in the case of Towse v. Henderson,* where, upon a charter-party, it was agreed that the vessel should proceed from Singapore to Whampoa, and there load from thtf agents of the affreighters a full and complete cargo of tea, and the master took in as ballast eighty tons of antimony ore, for which he received freight as merchandise, it was held that, if it occupied no more space than ballast would have done, he was entitled to do it. In that case a full cargo of tea (which was all that the charterer stipulated for) still needed ballast, which it was the duty of the ship-master to supply. Hence it could make no difference to the charterer what material was used for ballast, if it did not encroach upon the loading capacity of the vessel for tea.
The question still recurs, however, whether merchandise used for the purpose of ballasting a ship, or for the purpose of dunnage, and paying freight as merchandise, can be considered as part of the ship’s loading within the meaning of a warranty against an excess of loading beyond a limited amount, it being conceded that an equal quantity of ballast or dunnage proper would not be so regarded? Has the court a right to import into the contract an implied qualification that a reasonable amount of merchandise proper for ballast or dunnage shall not be reckoned as loading within the meaning of the contract? It is clear that the law does make the implied qualification that ballast and dunnage shall not be regarded as loading within the contract. Is it reasonable to extend that qualification to merchandise used as ballast or dunnage? If so, then, in the case of a cargo consisting of only one article, which needed no ballast or dunnage, the ship-owner would be entitled to deduct a reasonable amount for those purposes; and if there were a government regulation, that no ship should carry more cargo in *676 weight than the amount of her registered tonnage, she would on the same principle be entitled not only to carry ballatt and dunnage (properly such) in addition to her legal amount of cargo, but, where ballast and dunnage could be dispensed with, she would be entitled to carry an additional amount of cargo, beyond the legal allowance, equivalent to reasonable ballast and dunnage.
Such a construction could not be a sound one. It would be an arbitrary modification of the words of a law or contract. If the legislature in the one case, or the parties in the other, were willing that such a qualification should be made, it would always be very easy to make it in express terms. It would seem to be a dangerous practice for the court to make it for them.
It is not every cargo that requires ballast. Many cargoes will themselves sufficiently ballast the ship. Cargo may be so assorted that certain portions of it may act as ballast. And where a ship is doing a miscellaneous carrying business, it would seem to be the dictate of sound business judgment so to assort and arrange the cargo (if practicable) as to dispense with the use of ballast properly so called. For by this means the whole carrying capacity of the ship is saved for cargo. And when this idea is acted on, those portions of the cargo which are selected and used for trimming and settling the ship, may, in a loose and popular sense, be called ballast. But, nevertheless, they are not ballast in a legal or proper sense. They remain cargo.
Precisely the same may be said with regard to dunnage. Many kinds of cargo require no dunnage whatever. They arc composed of articles which will not be injured by water, nor by contact with each other. A cargo may be so assorted that some portions of it may bo placed so as to keep the other portions dry, or prevent them from coming into mutual collision. It is manifest in this case, a3 in that of ballast, that a prudent and skilful master of a vessel will (if practicable) so assort and arrange his cargo as to dispense with dunnage proper. And yet, in a loose sense, the articles of merchandise which he uses to perform the office of dun *677 nage, may be called dunnage. Still they are not legally nor properly such. If they are merchandise, they are cargo, and form part of the vessel’s lading. They will be subject to duties, and they will be covered by insurance on the cargo.
It is true that ballast or dunnage, even when clearly such, as shingle from the beach, wooden slabs, chips, or brush, may be sold for some small sum after the voyage is ended; but that will not make it any the less ballast or dunnage as contradistinguished from merchandise. No person of ordinary intelligence would find any difficulty in making the distinction. Had such articles been used in the case before us, though of the same weight as the cannel coal', the insurance company could not have complained; for it would not have been cargo. But when merchandise is used in lieu of dunnage, or to perform the office of dunnage, it does not lose its character as cargo; and the insurance company have the right to treat it as cargo. And it is evident that no form of words which the captain and the charterer might use on the subject can affect the rights of the insurance company. It would be res inter alios acta.
In view of these considerations it seems to us that the charge of the court was calculated to mislead the jury on the question at issue. It was “ that if they believed that the coal was received and used as dunnage, and not as cargo, it would not amount to a loading under the warranty of the policy.”
The evidence justified and required the instruction asked by the plaintiffs, namely, that if freight was received and paid for the coal, it was cai'go, and came within the warranty. Here was an admitted fact, which gave character to the article, stamping it as merchandise. Freight is never paid for mere dunnage, any more than for the sails and rigging of the ship.
The argument that it made no difference to the insurance company whether coal or any other article was used as dunnage, is unsound. It does make this difference: if coal paying freight is merchandise, it is within the warranty ; if mere dunnage were used, it would not be within the warranty. And the company were entitled to the benefit of those re *678 suits which the mutual self-interest of the parties would lead them to adopt. The company made their contract in view and in anticipation of all these considerations.
Our attention has been called to another case between the same parties on the same policy of insurance, decided by the Supreme Court of Massachusetts, and reported in 103 Massachusetts Reports, p. 401, in which a decision was made adverse to the views which we have expressed. With all due respect for that intelligent, and learned tribunal, and after giving full consideration to the views presented in the opinion given in that case, we cannot bring ourselves to a different conclusion from that to which we have come.
Judgment reversed, with instructions to issue a
Venire de novo.

 Abbott on Shipping, Pt. IY, o. 6, § 1.

 4 Exchequer, 890.