McBRIDE, Judge.
This injunction suit involves the internal affairs of the Peoples Methodist Episcopal Church of New Orleans (also called Peoples Methodist Church of New Orleans), which is located at the corner of Loyola Avenue and St. Andrew Street. The plaintiffs, who are Robert N. Brooks, bishop of the New Orleans area of The Methodist Church, Amos N. Taylor, the alleged pastor of the Peoples Methodist Episcopal Church of New Orleans, W. Talbot Handy, district superintendent of the New Orleans district of The Methodist Church, together with two other persons, brought the suit against W. Scott Chinn, who claims to be pastor of the Peoples Methodist Episcopal Church of New Orleans, and eleven officers and members of the Board of Trustees, seeking to enjoin Chinn from acting as pastor, and prohibiting him from interfering with the duties, powers, functions, and prerogatives of Amos. N. Taylor, and prohibiting the other defendants from acting as officers or members of the Board of Trustees, and from hindering and interfering with the duties, powers, functions, and prerogatives of Amos N. Taylor as pastor, and from interfering with the control and management of said church in other enumerated particulars.
The matter came on for trial on the rule nisi for a preliminary injunction, at which numerous witnesses testified and many documents were introduced in evidence. The judge a quo issued a preliminary injunction against all defendants as prayed for, and they have appealed.
It is conceded that the Peoples Methodist Episcopal Church of New Orleans is amenable to the “Doctrines and Discipline of the Methodist Church,” 1948, and that the Louisiana Conference Central Jurisdiction of The Methodist Church is the parent association or governing body of'The Methodist Church in Louisiana.
At the regular annual session of the Conference held November 2 through 7, 1948, at Lake Charles, Louisiana, a resolution was passed by the delegates to discontinue and abandon the Peoples Methodist Episcopal Church of New Orleans. The resolution was passed pursuant to Article 255 of “Doctrines and Discipline,” which in part reads thus: “1. With the consent of the presiding bishop and of a majority of the district superintendents and of the District Board of Church Location and Building (Paragraphs 704-7) of the district in which the action is contemplated, the Annual Conference may declare any charge or church within its bounds discontinued or abandoned. * * *
Shortly afterward, the congregation of the Peoples Methodist Episcopal Church of New Orleans selected defendant Chinn as their pastor, and up to the time of the issuance of the preliminary injunction Chinn continued to act in that capacity.
*585 A few months later, plaintiff Robert N. Brooks, bishop of the New Orleans area of The Methodist Church, appointed a Rev. Carter as pastor of the said church, who never took office because of the objections of Chinn and the congregation.
Matters seem to have remainded in status quo until some time in November, 1949, when the Louisiana Conference Central Jurisdiction of The Methodist Church, at its regular annual session, rescinded its former resolution of abandonment and discontinuance, which had the effect of restoring as a charge of The Methodist Church the Peoples Methodist Episcopal Church of New Orleans. Thereupon, plaintiff Brooks, the bishop, appointed Amos N. Taylor as pastor. The congregation refused to recognize the appointment of Taylor, and the church continued to function as such and to hold its regular church activities under the leadership of Chinn.
The insubordination of the congregation is well reflected in a letter dated November 16, 1949, written by Chinn to plaintiff Handy, the closing paragraph of which reads: “In fine, the Church now is not in any way a part of the Louisiana Conference and declares that nothing that the Conference may seek to do is binding and that they refuses to accept any minister assigned by the Bishop as pastor for the reason herein stated.”
Defendants first argue that the act of abandonment and discontinuance was arbitrary and ineffectual, because adopted without the consent of the congregation of the church, without notice, trial, or cause.
Article 2S5 of the “Doctrines and Discipline of the Methodist Church,” 1948, the pertinent part of which has already been quoted, specifically endows the conference, with the consent of the presiding bishop and of a majority of the district superintendents and of the district board of church location and building, with discretion to declare any charge or church within its bounds discontinued or abandoned. Whatever may have been the reason for the action of the conference is of no concern to us. From the documentary evidence, it appears that the resolution of abandonment and discontinuance was regularly adopted, and we are not privileged nor required to delve into the motives which lay behind the action.
The United States Supreme Court, in Watson v. Jones, 13 Wall. 679, 80 U.S. 674, 20 L.Ed. 666, said: “In this class of cases we think the rule of. action which should govern the civil courts, founded in a broad and sound view of .the relations of church and state under our system of laws, and supported by a preponderating weight of judicial authority is, that, whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, ■in their application to the case before them.”
Nor do we perceive any weig-ht in defendants’ argument that Chinn should now be recognized as pastor by virtue of his selection and appointment by the congregation. According to art. 431 of the “Doctrines and Discipline,” one of the duties of the bishop is to appoint pastors to-the various churches under his jurisdiction. Chinn himself, on cross-examination, admitted that Brooks, who is the bishop of the New Orleans area, had the right to appoint Taylor as pastor.
The Peoples Methodist Episcopal Church of New Orleans is a Louisiana corporation, organized May 19, 1922, and its objects and purposes are declared to be: “ * * * for Religious, Charitable and Educational purposes, and for the promotion of Christian instruction, the support of the Ministry, and the public worship of God, in accordance with the doctrine, discipline and usage of the Methodist Episcopal Church, as from time to time established, made and declared by the lawful authority of said Church, and to perform for, and among all men such acts of Benevolence, Charity and Friendship, as shall tend to their spiritual, moral and material welfare.”
The contention is also made that the court a qua erred in enjoining the trustees from exercising the corporate powers vest *586 ed in them by the charter. The basis .of the argument is that the Louisiana Conference Central Jurisdiction has no right to interfere with a domestic corporation in the control and management of its property. Several authorities are cited which are said to be controlling, particularly German Evangelical Congregation v. Pressler, 17 La.Ann. 127. None of the cited cases are authority for the proposition advanced. In the above titled case, the plaintiff, a religious congregation, sought to enjoin the minister from disturbing plaintiff in the peaceable enjoyment of its property and rights. The Court 'held that the trustees “are considered virtute officii entitled to the possession, and are lawfully seized of the grounds, buildings and other property belonging to the church. Though they hold the church property in trust for the congregation, still, it is their possession, and the courts are bound to protect them against every irregular and unlawful intrusion made against their will, whether by the pastor, members of the congregation, or by strangers.”
But in the instant case, we are confronted with quite a different situation. When the corporation was organized, it bound itself to conduct its affairs in accordance with the doctrine, discipline, and usage of the Methodist Church, and having done so, the corporation, although a domestic one, is amenable to the discipline of the supreme governing body of the church, even insofar as its property is concerned.
In Watson v. Jones, supra, the United States Supreme Court also said: “ * * * the appellants in the case presented to us have separated themselves wholly from the church organization to which they belonged when this controversy commenced. They now deny its authority, denounce its action, and refuse to abide by its judgments. They have, first erected themselves into a new organization, and have since joined themselves to another totally different, if not hostile, to the one to which they belonged when the difficulty first began. Under any of the decisions which we have examined, the appellants, in their present position, have no right to the property, or to the use of it, which is the subject of this suit.”
The conclusion is irresistable that .the property and ecclesiastical affairs of the Peoples Methodist Episcopal Church of New Orleans are subject to and exclusively governed by the laws, canons, and regulations of the parent — The Methodist Church.
From Morris v. Featro, 340 Pa. 354, 17 A.2d 403, 406, we quote; “ * * * It follows that the control, disposition, and management of the property of this church, as well as other ecclesiastical matters, are subject to and are exclusively governed by the laws, canons, rules and regulations of such church.”
Also, in First Regular Baptist Church v. Allison, 304 Pa. 1, 154 A. 913, 916, is to be found: “ * * * Defendants had an inalienable right to disagree with the uses set forth in the deed and charter, and with the beliefs of those who agree therewith, but this did not give them the further right to retain possession of the property devoted to those uses; all they could properly do was to depart therefrom, form another alliance and erect a new church, dedicated to their own beliefs. * * * ”
Quoting from Canovaro v. Brothers of the Order of Hermits of St. Augustine, 326 Pa. 76, 191 A. 140, 145:
“Inasmuch as the church in which appellants claim membership is a subordinate body of the Roman Catholic Church, it follows that their rights and obligations as members are governed by the laws of that denomination, since the voluntary act of joining the church subjects them to its rules and regulations. * * *
* * * * * *
“The local or parish church cannot divorce or separate itself from the mother church, set up a new independent organization and by so doing retain the ownership of the local church or congregational property. * * * In no event can the members utilize the property in a manner foreign to the principles, customs, and rules of the church to1 which it has been conveyed, even though a majority or the en *587 tire congregation express their approval of such action. * * * Neither can it, or a majority of its members, sever its connection or separate itself, from the ecclesiastical body by and through which it was endowed with faculties, which enabled it to organize as part of the church family insubordination to the given authority of the church and its laws and retain any property rights. * * * ”
In Rev. Stim, Pastor St. Mary’s, v. Bezinec, 39 Lack.Jur. 65, affirmed 325 Pa. 492, 190 A. 894, the syllabus reads:
“ * * * the majority faction has no legal right to divert the property to purposes other than those for which it was established.
“In such cases, the minority of the congregation, adhering to the rules discipline, regulations, canons and usages of the original organization will be entitled to the ownership, use and control of the property; and mere administrative inconsistencies and disciplinary irregularities will not affect the result.”
In Presbytery of Bismarck v. Allen, 74 N.D. 400, 22 N.W.2d 625, 631, the Court said: “The right of the defendants to withdraw from the organization of the Pres--byterian Church in the United States of America and join another organization is not questioned. But to withdraw and take the church property is another matter. * * ⅜»
“Doctrines and Discipline of The Methodist Church,” 1948, in art. 245, provides: “ * * * The trustees shall not prevent or interfere with the pastor or other duly authorized ministers of The Methodist Church in the use of said property for religious services or other proper meetings recognized by the law and usage of The Methodist Church.”
If the contention of appellants is to prevail, the effect would be that the trustees would have it within their power to frustrate the powers and duties of the pastor and other officers of the Peoples Methodist Episcopal Church of New Orleans who remain loyal to the parent body, and to deprive them of the use and enjoyment of the church property, and to interfere with the conduct of ecclesiastical pursuits.
There is some evidence in the record concerning an organization known as Peoples Methodist Community Center, which is a separate and distinct corporation, but which occupies the parsonage of the Peoples Methodist Episcopal Church of New Orleans. We see no necessity for discussing this evidence, except to say that Chinn admitted in his testimony that the center is under the supervision of The Methodist Church and the plaintiff Brooks, who is bishop of this area.
We perceive no error in the judgment, for the plaintiffs have made out a prima facie case.
A preliminary injunction is designed to preserve rights pending a trial of the issues of the case on the merits. It is well settled that much latitude is to be given to the trial judge in determining .whether he will grant or refuse a preliminary injunction, and his judgment will be disturbed only in cases where there has been a clear abuse of his discretion. Drew v. Town of Zwolle, 185 La. 867, 171 So. 59; Foscue v. Mitchell, 185 La. 963, 171 So. 91; Palama v. Livaudais, 179 La. 201, 153 So. 691.
The judgment appealed from is affirmed.
Affirmed.