132 So.2d 667 (1961)
LOUISIANA DISTRICT, CHURCH OF THE NAZARENE
v.
CHURCH OF THE NAZARENE, Ponchatoula, Louisiana, The Bible Holiness Church of Ponchatoula, Davies Cooper, John G. Stanga and Virgil Anderson.
No. 5375.
Court of Appeal of Louisiana, First Circuit.
June 30, 1961.
Rehearing Denied September 25, 1961.
Certiorari Denied November 6, 1961.
*669 Robert F. Kennon, Sr., and Robert F. Kennon, Jr., of Kennon, White & Odom, Baton Rouge, for appellant.
Tom H. Matheny of Pittman & Matheny, Hammond, for appellee.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
LANDRY, Judge.
This is an action by a church corporation, Louisiana District Church of the Nazarene, to be declared owner of certain real property standing in the name of its local or subordinate corporate member, the Bible Holiness Church of Ponchatoula, (formerly Church of the Nazarene, Ponchatoula, Louisiana) and its board of trustees individually, namely, Davies Cooper, John G. Stanga and Virgil Anderson, by virtue of the alleged disorganization of defendant subordinate corporation and the latter's withdrawal from the parent church without the consent or approval of the parent corporation and in reputed violation of express rules, regulations and discipline adopted and accepted by defendant corporation.
For a cause of action plaintiff alleges that prior to September 18, 1945, defendant corporation existed as a voluntary unincorporated association organized pursuant to authority from the general Church of the Nazarene and as a component part of plaintiff corporation and on September 18, 1945, it is asserted defendant was duly incorporated as a non-profit corporation in conformity with the provisions of Act 254 of 1914 under the corporate name of "The Church of the Nazarene of Ponchatoula, Louisiana". On the day of its legal incorporation defendant became the owner by warranty deed to defendant in its own name (not in trust for plaintiff or the general Church of the Nazarene) of certain real property situated in Tangipahoa Parish, Louisiana. Subsequently there was erected on said property a church edifice constructed with funds provided by the general Church of the Nazarene, the individual members of defendant church and various other sources. It is next averred that from its inception (both before and after its legal incorporation), defendant corporation submitted itself to the discipline, rules, regulations, Manual and authority of the National Church of the Nazarene, of which church plaintiff corporation is a Louisiana subsidiary, and to its constitution and government and so remained until January 13, 1959.
The petition further relates that a movement to disassociate defendant corporation from plaintiff culminated in the adoption by the membership of defendant corporation of a resolution authorizing defendant's Board of Trustees to amend the articles of defendant's corporate charter to change the name, purpose and doctrine of the Nazarene Church as therein stated and set forth to *670 the name, purpose and doctrine of the Bible Holiness Church.
Petitioner also alleges that subsequently, on February 8, 1959, the Board of General Superintendents of the general Church of the Nazarene, in conformity with its Manual and rules of discipline, to which defendants subscribed on September 18, 1945, declared defendant "disorganized, subject to provisions of the Manual of the Church of the Nazarene relating to property".
It is then averred that pursuant to defendant's disorganization by the general Church of the Nazarene, plaintiff, Louisiana District Church of the Nazarene, a subsidiary of the National or General Church of the Nazarene, filed the instant suit to have defendant's disorganization judicially decreed and recognized and plaintiff adjudged owner of the real property standing in defendant's name in accordance with the rule, regulation, Manual and discipline of the general Church of the Nazarene, and more particularly, Articles 117, 118, 119, 170, 171 and 172 of its Manual or rules, a copy of which is attached to and made part of the petition filed herein.
To plaintiff's petition, defendants filed exceptions of lack of proper judicial capacity, vagaueness and no right or cause of action. The trial court sustained the exceptions of no right and no cause of action and dismissed plaintiff's demand from which judgment plaintiff has taken this appeal. No ruling was made by the trial court on defendants' exceptions of vagueness and lack of proper judicial capacity.
In sustaining defendants' exceptions of no right and no cause of action, the trial court relied upon the provisions of Article 2275 LSA-C.C., which states in effect that agreements for the sale of real estate must be in writing. In substance, the court below held that since plaintiff's petition did not allege the existence of a written sale or agreement between the litigants at bar with respect to the transfer of subject property, the court was powerless to decree plaintiff to be the owner of the property in dispute herein. As previously stated, the learned trial judge did not pass upon defendants' exceptions of vagueness and lack of proper judicial capacity and on appeal both plaintiff and defendants urge in brief that we rule thereon.

Exception of Vagueness
In support of their exception of vagueness, defendants contend: (1) the petition refers to the general Church of the Nazarene, the Louisiana District of the Church of the Nazarene and the Church of the Nazarene of Ponchatoula, Louisiana, but alleges no connection or inter-relation between said organizations; (2) the petition alleges the individual members of defendant corporation submitted themselves to the authority of the general Church of the Nazarene but does not set forth in detail the manner or form of acceptance of the rules and regulations of the alleged parent church nor the method by which said acceptance and submission was effected; (3) plaintiff's petition does not show that the church Manual attached thereto is the same as that embraced and accepted by defendant and to which defendant and its individuals submitted on September 18, 1945; (4) the petition alleges defendant's charter subjected defendant to the rules of the general Church of the Nazarene but plaintiff failed to either attach a copy thereof to plaintiff's petition or cite the Article thereof relied upon by plaintiff; (5) the petition does not set forth the exact amount of financial aid alleged to have been received by defendant from plaintiff or the general Church of the Nazarene; (6) the petition does not particularize any connection or relationship between plaintiff and defendant corporations or the respective governing bodies thereof; (7) plaintiff's petition does not specify the precise nature of the assistance and support allegedly rendered defendant by plaintiff corporation and the general church; (8) plaintiff has failed to set forth in detail the acts and incidents which plaintiff contends disassociated defendant from the general church or to identify individual members of defendant corporation who reputedly participated therein; (9) plaintiff neither *671 alleges nor shows the exact manner in which defendant's reported actions affected plaintiff corporation; (10) the allegation is made that defendant's disassociation was without the consent of plaintiff or the National Church but does not aver such consent to be necessary or requisite; (11) plaintiff should be required to particularize the items or articles of the rules, regulations and manuals upon which plaintiff's claim is predicated.
Having examined plaintiff's petition with the utmost care, we note that in unmistakable terms it requests the court to recognize the disorganization of defendant church and declare plaintiff to be the owner of certain property standing in the name of defendant corporation all in pursuance to certain specific rules and regulations and Manual provisions of the general Church of the Nazarene which said rules and regulations were averred to be adopted, embraced and submitted to by defendant. We note further the Manual relied upon by plaintiff is attached to and made part of the petition filed herein.
The petition alleges that defendant church originated pursuant to the authority of plaintiff, Louisiana District, Church of the Nazarene, and that defendant thereby became a component part of the Louisiana District. It is further asserted that specifically designated defendants, namely, Davies Cooper, John G. Stanga and Virgil Anderson, caused defendant's Articles of Incorporation to be amended so that not only was defendant's corporate name changed from "Church of the Nazarene, Ponchatoula, Louisiana" to "The Bible Holiness Church of Ponchatoula, Louisiana" but also that the purpose and doctrine of defendant church were changed from those of the National Church of the Nazarene to those of the Bible Holiness Church in violation of the rules, regulations, manual and discipline of the general Church of the Nazarene. In addition to the foregoing, the petition alleges the aforesaid unauthorized action on the part of defendant constituted disorganization of defendant pursuant to the rules and regulations of the mother church which in substance provide that under such circumstances, the property of the local subsidiary shall revert to the district church of which the local church forms a component part.
Although the petition does contain some immaterial and extraneous allegations as contended by defendant, we fail to see how particularization of such allegations would serve any useful purpose. Defendants' complaint that plaintiff's petition is vague with reference to the particular portion of the discipline, rules, and Manual of the National Church of the Nazarene relied upon by plaintiff is without basis considering plaintiff's petition mentions said rules by specific page, article and paragraph and in addition, plaintiff has annexed a copy thereof to its petition. Having made specific reference and mention of the exact articles and sections relied upon, it was unnecessary for plaintiff to incorporate same into the petition verbatim.
The petition also recites: "* * * that the Manual in current use is the 1956 edition published by authority of the Fourteenth General Assembly held in Kansas City, Missouri, on June 14-22, 1958, a copy of which is filed with this petition and marked Exhibit `A'."
In this connection we note Article 853, LSA-Code of Civil Procedure, states that a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.
We believe the allegations contained in plaintiff's petition adequately state the object of plaintiff's demand and the pertinent facts and circumstances upon which it is predicated. Much of the detailed information sought to be elicited by the particularization which defendant would have us demand of plaintiff is peculiarly within the knowledge of defendant or at least as readily available to defendant as it is to plaintiff. Plaintiff having set forth the nature *672 and object of its demand and having placed defendant upon notice of the material facts upon which plaintiff will rely in substantiation of plaintiff's claim, we believe that defendant is in a position to adequately defend this lawsuit by responding to the averments of plaintiff's petition.
For the foregoing reasons, defendants' exceptions of vagueness are overruled.

Exception of Lack of Proper Judicial Capacity
The basis of this exception is the fact that plaintiff's articles of incorporation were not executed by authentic act as required by the Nonprofit Corporation Law, LSA-R.S. 12:103, but rather were executed under private signature duly acknowledged by each subscribing incorporator before a Notary Public. A copy of plaintiff's Articles of Incorporation together with the certificate of incorporation issued by the Secretary of State were produced in evidence and filed of record in the trial court. Examination of the Articles reveals they were in fact executed under private signature and subsequently acknowledged as contended by defendants. However, the certificate of incorporation issued by the Secretary of State is regular in form and declares plaintiff to be a duly incorporated entity.
Article 2242 LSA-C.C. provides as follows:
"Art. 2242. An act under private signature, acknowledged by the party against whom it is adduced, or legally held to be acknowledged, has, between those who have subscribed it, and their heirs and assigns, the same credit as an authentic act."
It may be contended the foregoing article is inapplicable herein since, according to its terms, it applies only between those who have subscribed the act in issue. There is no doubt, however, that the law still preserves the distinction and difference between an authentic act and an act under private signature duly acknowledged. For example, in the case of a donation inter vivos of immovables the statutory requirement of an authentic act couched in mandatory terms is held an indispensable prerequisite of validity and an acknowledged act ineffectual for such purposes. From the foregoing it would appear the possibility exists that the validity of plaintiff's incorporation might be subject to attack in a proper proceeding since plaintiff's Articles of Incorporation were not executed by authentic act as required by the previously mentioned statute. We herein express no opinion in this regard, however, for the reason the present proceeding is not a proper one for determination of the question of plaintiff's corporate existence, as will hereinafter be shown.
The Nonprofit Corporation Law of this state contains the following Section:
"L.S.A. R.S. 12:107. Validity and effect of certificate of incorporation
"The certificate of incorporation issued by the Secretary of State in accordance with the provisions of this Chapter shall be conclusive evidence of the fact that the corporation has been duly incorporated, except in any proceeding brought by the state to annul, forfeit, or vacate the corporation's franchise, in which case the certificate of incorporation shall be only prima facie evidence of due incorporation."
This section is identical to the section of the Business Corporation Law dealing with the effect to be given to a certificate of incorporation (i. e. LSA-R.S. 12:10), and was taken from Section 9 of the Model Business Corporation Act sometimes known as the Uniform Corporation Act.
These sections deny to all, including the State, the right to collaterally attack the existence of a corporation, reserving only to the State the right to attack corporate existence in a direct action. They further provide corporate existence is conclusively proved by the certificate of incorporation issued by the Secretary of State. There appears in the record such certification of plaintiff's corporate being *673 and under the unambiguous provisions of the statute defendants may not collaterally attack same.
As stated by Charles E. Dunbar and Eugene A. Nabors in their article on "The Louisiana Business Corporations Law" in Volume 5 of LSA-R.S. Page XXXI at Page XXXIX:
"Sections 5 and 10 give certainty to the use of corporations by the establishment of a system which makes it practically impossible to collaterally attack a corporation's existence. The Attorney General, acting for the state in quo warranto proceedings can, of course, attack the validity of incorporation proceedings because of failure to comply with the requirements of the statute. Compliance with the requirement for filing the articles of incorporation with the recorder of mortgages brings the corporation into existence and enables it to go forward with regular business transactions which cannot be attacked by private parties even though there is failure to comply with any further formalities. In addition, the issue of the certificate of incorporation by the Secretary of State prevents private parties from attacking the validity of any of the incorporation formalities."
According to the Uniform Law Commissioner's Note to Section 9 of the Model Business Corporation Act, found in LSA-R.S. Vol. 5, pp. 64-65, note to LSA-R.S. 12:10:
"The object of this section is to solve the de facto problem. The Ninth Draft of the Uniform Corporation Act was the first to attempt to deal with this problem.
"By the weight of authority, there has been established in this country a judge-made rule that `A de facto corporation is a reality. It has an actual and substantial legal existence. It is as the term implies a corporation.' Society Perum v. Cleveland, 1885, 3 N.E. 357, 43 Ohio St. 481; Kardo Co. v. Adams, 1916, 231 F. 950, 146 C.C.A. 146; 1 Thompson, Secs. 226-9. It is an American doctrine. It had no recognition in England until adopted there by the terms of section 17 of the Companies (Consolidation) Act, 1918. The doctrine had some judicial recognition in Canada and has there become firmly established by virtue of Secs. 4 and 111 of the Dominion Companies Act. See Masten & Fraser, Company Law, p. 11.
"There is by no means complete accord in the decisions of the courts of the various states. Some states permit collateral attack upon the fact of incorporation unless there is the basis for raising an estoppel. (See 1 Mechem, p. 242, foot-note 1 and cases cited.) The de facto doctrine was repudiated by the courts of Maryland. Boyce v. Towsontown, etc., Church, 1876, 46 Md. 359. But by L.1908, c. 240 § 6, it was provided: `Where an effort has been made in good faith to form, under the laws of this State, a corporation formable thereunder, neither party to any transaction with it shall deny the legality of its incorporation or organization in any suit or proceeding growing out of such transaction.'
"Provisions similar to that in Maryland and to that in the present Act have been found in the following states: Arizona, California, Florida, Georgia, Iowa, Kentucky, Louisiana, Maryland, Montana, Nevada, Oklahoma, Oregon, Philippine Islands, South Carolina, South Dakota, Tennessee, and Vermont."
The Louisiana Act referred to as similar to the Maryland statute is Act 78 of 1904, Section 2. Act 267 of 1914, § 2(i) provided only that the certificate of incorporation should be received in evidence as prima facie proof of the legal creation and existence of the corporation. The 1928 corporations law, Act No. 250 § 10, deprived all except the State of the right to collaterally *674 attack the corporate existence by providing that the certificate of incorporation shall be conclusive evidence of incorporation. The 1950 Revised Statutes made it clear that not even the State may collaterally attack corporate existence.
Plaintiff has cited Weil v. Leopold Weil Building & Improvement Company et al., 126 La. 938, 53 So. 56; Leader Realty Company, Ltd. v. Lakeview Land Company, 127 La. 1059, 54 So. 350; Shreveport Long Leaf Lumber Co. v. Jones, 188 La. 519, 177 So. 593; Rowley v. Bird Island Trapping Company, Inc., 202 La. 273, 11 So.2d 553, in support of the proposition that corporate existence is not subject to collateral attack. Said cases together with Music Box, Inc. v. Mills et al., 10 La.App. 665, 121 So. 196; Screwmen's Benev. Ass'n of Louisiana v. Monteleone, 168 La. 664, 123 So. 116, and Supreme Council of the Lily of the Valley, etc. v. Lee, 171 La. 433, 131 So. 289, while not squarely in point (because they do not deal with apparent defects on the face of the articles of incorporation) nevertheless demonstrate the reluctance of our courts to permit collateral attack upon corporate existence even before the statutory law so clearly proscribed such action.
Although it may be argued that since plaintiff's articles of incorporation were executed in 1944 prior to the adoption of the Nonprofit Corporations Law, LSA-R.S. 12:107 has no application, we are of the opinion the Nonprofit Corporations Law was intended in this respect to apply to all existing corporations and not merely to those which might be created in the future. The statute under which prior "nontrading" corporations had been formed was repealed, but this did not mean that those corporations would not be regulated by the provisions of the repealing statute. That the Nonprofit Corporations Law was intended to apply to corporations already in existence is indicated clearly by LSA-R.S. 12:101(2) which provides as follows:
"`Corporation' means a corporation formed under this Chapter, as well as a corporation formed under the laws of this state before this Chapter became effective but of a class of corporations that might be formed under this Chapter."
Therefore, LSA-R.S. 12:107 (originally adopted as § 7 of Act No. 455 of 1948) was intended to clarify the problem of de facto corporations by insuring against collateral attack upon corporate existence of corporations whose incorporation has been certified by the Secretary of State. It is retrospective in application; it is a statute of repose.
Defendant has also suggested that the plaintiff has no power to bring this action since the power to sue and be sued is not expressly stated in the articles of incorporation. The following statement of the law in 19 C.J.S. Corporations § 1287, p. 967, verbo Corporations, is pertinent:
"§ 1287. Capacity to Sue and Be Sued
"A corporation has capacity to sue and be sued.
"One of the ordinary incidents of a corporation is the power or capacity to sue and be sued. This capacity extends to suits both at law and in equity, and is not limited to the purpose of the powers enumerated in the corporate charter. As an incident to its capacity to sue or be sued, where a corporation sues or is sued, it occupies the same position as a natural person sui juris, and may take any step that an individual might take under like circumstances to bring the action to final judgment.
"A corporation de facto may sue, and, as stated supra § 95, the legality of its existence cannot be attacked collaterally by questioning its right to sue or defend. * * *"
The LSA-Civil Code contains the following provisions:
"Art. 432. Corporations must not only be authorized by the Legislature, *675 or established according to law, but a name must be given to them; and it is in that name that they must sue or be sued, and do all their legal acts, although a slight alteration in this name be not important." (Emphasis supplied.)
"Art. 433. Corporations legally established are substituted for persons, and their union which renders common to all those who compose them, their interests, their rights and their privileges, is the reason why they are considered as one single whole. Hence it follows that they may possess an estate, and have a common treasury for the purpose of depositing their money; that they are capable of receiving legacies and donations; that they may make valid contracts, obligate others and obligate themselves towards others; exercise the rights which belong to them; manage their own affairs; appear in courts of justice, and even enact statutes and regulations for their own government, provided such statutes and regulations be not contrary to the laws of the political society of which they are members." (Emphasis supplied)
In Louisiana, artificial persons, such as partnerships, public or private corporations, as well as natural persons, may appear in courts as parties litigant. Tyler Co. v. Sutton, La.App., 51 So.2d 401. See also Metryclub Gardens Ass'n v. Council, La.App., 36 So.2d 56. The right to sue in the courts of Louisiana extends to foreign corporations. Life Association of America v. Levy, 33 La.Ann. 1203.
Accordingly, defendants' exceptions of lack of proper judicial capacity are overruled.

Exception of no Right and no Cause of Action
The learned trial court sustained defendants' exceptions of no right and no cause of action on the ground that pursuant to Article 2275 LSA-C.C. the transfer of real estate may be accomplished only by written agreement and cannot be effected by operation of the rules, laws, or regulations of an ecclesiastical body or corporation even where such rules are subscribed to and adopted by a subsidiary corporation. Defendants contend, of course, the trial court properly applied the foregoing codal authority. Defendants further contend it is settled law that the courts of this state refuse to review the actions of the governing body of a church concerning internal affairs of such institutions.
Defendants next argue that when property is held by a religious congregation which, by the mutual disorganization thereof, is wholly independent of other ecclesiastical authority insofar as church government is concerned and which owes no fealty or obligation to any higher authority, the property so held is held in trust for the local congregation as pronounced in Katz v. Singerman, 241 La. 103, 127 So.2d 515. Finally, defendants maintain that where property is conveyed to a society or congregation in its corporate capacity and not in trust for the religious denomination to which it belongs such property is not subject to the control of any ecclesiastical judicatory.
Plaintiff appellant takes the position the trial court erred in applying the provisions of LSA-C.C. 2275 to the case at bar because plaintiff's claim to ownership or the right to be recognized as owner of the property involved herein is not predicated upon an alleged sale of said property by defendant to plaintiff but rather on the church rules and regulations which in effect provide for reversion to plaintiff of property belonging to subordinate ecclesiastical units upon the occurrence of certain conditions which plaintiff alleges have come to pass in the instant case.
Conceding the law of this state to be that courts refuse to review the action of the governing body of a church concerning the internal affairs thereof, plaintiff nevertheless *676 submits the present case comes within the recognized exception thereto which holds that civil law will uphold and enforce church law when property rights are involved or are at issue. Finally, plaintiff argues that the rule that property conveyed to a society or congregation in its own corporate name and capacity (and not in trust for the benefit of a religious denomination to which it belongs) is not subject to control of any ecclesiastical judicatory, applies only in those instances wherein the acquiring church is an independent autonomous organization but has no applicability to cases such as the present wherein the property was acquired by a local organization which had expressly and specifically subjected itself to a superior general church organization and has in addition, adopted and embraced the rules of the general organization providing for forfeiture by the local subordinate and reversion to the general organization of properties held by the subordinate upon the occurrence of specified events or circumstances. We believe plaintiff is correct in the contention the trial court erred in rejecting plaintiff's demand on authority of LSA-C.C. 2275, which reads as follows:
"Art. 2275. Verbal sale of immovables
"Art. 2275. Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold."
At this point we deem it advisable to set forth the specific articles and provisions of the general Church of the Nazarene relied upon by plaintiff herein inasmuch as we deem their terms decisive of the issues involved in this litigation.
Plaintiff herein was incorporated pursuant to Part IV, Chapter II, Article III, Paragraph 182, appearing at page 104 of the Manual which reads as follows:
"182. The District Assembly may authorize where civil law permits, the district advisory board to incorporate. After incorporation as above provided, the district advisory board shall have power on its own resolution, to purchase, own, sell, exchange, mortgage, deed in trust, hypothecate, lease, and convey any property, real and personal, as may be necessary or convenient for the purpose of the corporation."
Defendant's incorporation was effected in accordance with Part IV, Chapter I, Article XVI, Paragraph 114 of said Manual set forth on pages 73 and 74 of the Manual and reading thus:
"114. In all places where the statutes will permit, the trustees shall have the local church incorporated. Where not inconsistent with civil law, the articles of incorporation shall set forth the powers of the corporation and provide that the corporation shall be subject to the government of the Church of the Nazarene, as from time to time authorized and declared in its Manual by the General Assembly of said church. All the property of this corporation shall be managed and controlled by the trustees subject to the approval of the local church."
The realty in question was transferred to and acquired by defendant in conformity with the provisions of Part IV, Chapter I, Article XVI, Paragraph 115 set forth on Page 74 of said Manual and which states:
"115. When a local church is incorporated, all property acquired shall be deeded, directly to the church in its corporate name when it is possible to do so."
Defendants' attempt to sever connections from the general church was in contravention of Part IV, Chapter I, Article XXVIII, *677 Paragraph 172, which is set forth on Page 94 of the Manual as follows:
"172. No local church may withdraw as a body from the Church of the Nazarene, or in any way sever its relation thereto, except by provisions of the General Assembly, and upon agreed conditions and plans."
Defendant was disorganized by the Board of General Superintendents of the general Church of the Nazarene and the claims asserted by plaintiff arise from and in pursuance of the provisions of Part IV, Chapter I, Article XXVII, Sections 169-171, inclusive, of the Manual entitled "Disorganization of Churches", the complete context of which said sections are given on Page 93 of the Manual as follows:
"169. When it seems clear to a District Superintendent that a local church organization should no longer continue as such, it may be disorganized by action and formal pronouncement of the Board of General Superintendents on recommendation of the District Superintendent."
"170. In case a local church becomes disorganized, any church property which shall exist may in no way be diverted to other purposes, but shall pass to the control of the District Assembly, for the use of the Church of the Nazarene at large, as the District Assembly shall direct; and trustees holding property for the disorganized local church shall sell or dispose of the same only on the order and under the direction of the appointed agent of the District Assembly, and turn the funds over to such agent."
"171. No board of trustees may divert property from the use of the Church of the Nazarene."
The rule applied in distinguishing those churches which are independent and autonomous to those which are subsidiaries of a general church and, as such are amenable to the Supreme authority of the parent church is set forth in Vol. 76 C.J.S. Verbo Religious Societies § 60(a), p. 831:
"§ 60(a). The determination of questions relating to the control and use of church property depends largely on the form of church government which the members of the church have adopted and to which they adhere, and on constitutional and statutory provisions relative thereto. The majority of the members or corporators of a religious society or corporation may, as a general rule, direct or control its property, but the acts of such majority must conform to the laws and principles of the church and the charter of the corporation or they are of no effect against a dissenting minority.
"In independent churches, or churches which have adopted the congregational form of government without revisory power in a superior church judicatory, the control of church property is in the hands of the majority of the members of the society or other body having charge of its temporalities, and the independent control of the church property by its own members is not affected by its affiliation with other churches or church bodies having advisory powers. Where a local religious association is a subordinate member of a general church organization, the control of the property of a particular church to the extent that temporalities only are concerned generally is in the hands of the trustees, but in matters relating to the use and occupation of the church house for purposes of worship, the trustees' control is itself subject to the control which the judicatories of the church, beginning with the session, exercise over the spiritual affairs of the congregation. Under a statute so providing, the rules of the church are decisive of the question as to who has power of control and disposition of property of the subordinate bodies of a denomination.

*678 "A corporation holding real and personal property in trust for the use and benefit of all members of an unincorporated church association has the exclusive right of control and management of such property, and the duty to use it to serve the interests of such beneficiaries. An unincorporated church organization has been held to occupy a corporate status relative to property owned and used by it for church purposes. Under some statutes, the title and right to possession of property of an unincorporated religious society are in the trustees for use according to the intent expressed in the conveyance.
"Where the trustees are themselves the corporation, a majority of the trustees control, where the articles of incorporation and by-laws so provide. The trustees of religious societies incorporated under some statutes have no right of control or disposition except as directed by the beneficiaries of the trust, but the trustees of societies incorporated under other statutes may be invested with power to acquire and transfer property and with power of general management. Under some statutes the trustees alone have control of the property to the exclusion of the congregation or individual members."
Although the Articles of Incorporation of defendant church are not part of the record, plaintiff's petition contains the following allegations which (along with all other allegations by plaintiff) must, for purposes of these exceptions, be accepted as true, namely:
"* * * That in said charter the incorporators set forth that the incorporated church should be subject to the provisions of the government of the Church of the Nazarene, as from time to time authorized and declared by the General Assembly of said Church so long as it shall not be inconsistent with the constitution and laws of the State of Louisiana."
Applying the hereinabove stated rules of interpretation to the Manual and charter provisions involved in this litigation, it clearly appears that defendant is not an independent autonomous organization as contended by learned counsel for defendant but that, on the contrary, defendant is a subordinate subsidiary of a general or parent church. It further appears beyond question that defendant was organized as part of the international sect known as the "Church of the Nazarene" and in such capacity and relationship subject to the authority, government, rules and discipline of said church or organization. As set forth in its "Manual", it also appears beyond question that defendant was not an independent congregational church and, as such, free to purchase, retain and hold property in its own name devoid of regulation or control by a parent corporation but that the property which defendant held in its own name was clearly subject to the conditions and restrictions contained in the Manual of the general church.
Even a casual reading of plaintiff's petition and the hereinabove quoted pertinent manual provisions reveals plaintiff's claim to be recognized as owner of the real property involved in this litigation is not predicated upon a verbal agreement but upon the written rules, regulations and Manual of a general church authority or organization submitted to, accepted, approved and endorsed without reservation by defendant in defendant's organization charter. It further appears that after formally accepting and adopting said rules defendant subsequently became dissatisfied with its affiliation with plaintiff and attempted to convert to another church without relinquishing real property owned by defendant, said conversion being in direct contravention to the rules and regulations of the general church providing that under such circumstances ownership of church property held by defendant in its own name shall revert to and devolve upon plaintiff. In view thereof, the provisions of LSA-C.C. 2275 are clearly without application herein. In *679 effect plaintiff in this suit is declaring upon a contract or agreement with defendant evidenced by written documents which consist of the Manual and the provisions of defendant's charter of incorporation. In addition, plaintiff herein asserts a continuing relationship with defendant of several years duration founded upon the documents alluded to. In a sense, therefore, it may be said plaintiff herein is seeking specific performance of contractual rights alleged to have become enforceable by virtue of an occurrence of an agreed suspensive condition.
Additional evidence of defendant's non-autonomy is to be found in the preamble to Part IV of the Manual which states:
"The government of the Church of the Nazarene is representative, and thus avoids the extremes of episcopacy on the one hand and unlimited Congregationalism on the other." (Emphasis by the Court.)
The rules and regulations relied upon by plaintiff herein clearly provide that real property held by subordinate or local organizations or churches in their own name is subject to the provisions and restrictions of the general church governing the purchase sale, encumbering, use and disposition thereof as set forth in the Manual of the general church. Upon defendant's organization as a subordinate member of the general church organization, defendant, in effect, entered into a pact or agreement with the general church, one of the terms and conditions thereof being that upon disorganization any church property held by defendant would revert to and become the property of an intermediate corporation of the general church organization, namely, plaintiff herein.
It is elementary that agreements freely and voluntarily contracted will be enforced by courts of law according to the intention of the parties thereto in the absence therein of provisions or terms violative of principles of law or good morals. In the instant case we detect nothing which could be held in derogation of established legal or moral concepts.
We concede the well recognized and established rule to be that courts will not interfere with the internal affairs of a church, fraternal organization or other similar institution. However, it is also well established jurisprudence that where property rights are involved courts will review the actions of such institutions and their various subordinate components.
In our own jurisprudence the issue herein presented appears to have been previously resolved adversely to defendants by our esteemed brothers of the Fourth Circuit, formerly Court of Appeal, Orleans, in Brooks v. Chinn, La.App., 52 So.2d 583, 586, wherein the court reviewed the law on the subject matter under consideration. In the Brooks case, supra, the court held that where a corporation organized for religious purposes binds itself to conduct its affairs in conformity with the doctrine, discipline and government of a parent church, it is amenable to the discipline of the supreme governing body even though such a corporation be a domestic corporation. We note in the Brooks case, supra, ample citation of authority for the view therein expressed and particularly note the following language used by the court:
"But in the instant case, we are confronted with quite a different situation. When the corporation was organized, it bound itself to conduct its affairs in accordance with the doctrine, discipline, and usage of the Methodist Church, and having done so, the corporation, although a domestic one, is amenable to the discipline of the supreme governing body of the church, even insofar as its property is concerned.
"In Watson v. Jones, supra [13 Wall. 679, 80 U.S. 674, 20 L.Ed. 666], the United States Supreme Court also said: ` * * * the appellants in the case presented to us have separated *680 themselves wholly from the church organization to which they belonged when this controversy commenced. They now deny its authority, denounce its action, and refuse to abide by its judgments. They have first erected themselves into a new organization, and have since joined themselves to another totally different, if not hostile, to the one to which they belonged when the difficulty first began. Under any of the decisions which we have examined, the appellants, in their present position, have no right to the property, or to the use of it, which is the subject of this suit.'
"The conclusion is irresistable that the property and ecclesiastical affairs of the Peoples Methodist Episcopal Church of New Orleans are subject to and exclusively governed by the laws, canons, and regulations of the parent The Methodist Church.
"From Morris v. Featro, 340 Pa. 354, 17 A.2d 403, 406, we quote: ` * * * It follows that the control, disposition, and management of the property of this church, as well as other ecclesiastical matters, are subject to and are exclusively governed by the laws, canons, rules and regulations of such church.'
"Also, in First Regular Baptist Church v. Allison, 304 Pa. 1, 154 A. 913, 916, is to be found: ` * * * Defendants had an inalienable right to disagree with the uses set forth in the deed and charter, and with the beliefs of those who agree therewith, but this did not give them the further right to retain possession of the property devoted to those uses; all they could properly do was to depart therefrom, form another alliance and erect a new church, dedicated to their own beliefs. * * *'"
Katz v. Singerman, 241 La. 103, 127 So. 2d 515, is cited by defendants in support of the contention courts will not interfere with the action of the governing body of a local church. In so relying upon the Katz case, supra, defendants obviously ignore the distinction which the Supreme Court therein painstakingly set forth at some length. Moreover, in said case the Supreme Court expressly found the religious organization therein involved, namely, a Jewish Synagogue, to be an independent, autonomous, congregational church. The Supreme Court further exhaustively reviewed the jurisprudence on the entire subject matter and found, in effect, that the issue presented did not involve civil or property rights but merely internal government or administration consisting of the right and authority to determine whether a certain proposed course of action was in conformity with religious ceremonies according to a prescribed ritual. We do not view Katz v. Singerman, supra, as overruling Brooks v. Chinn, supra.
Since in the various religious sects or denominations local congregations submit to a greater or lesser degree to the authority of the general church, it necessarily follows the constitution, rules, regulations and discipline of the general church which the local subordinate has accepted and embraced willingly in each case determine the extent of the authority of the local church to control church property whether held by the local group in its own name or held in trust for the general organization.
Defendant has cited numerous other decisions holding that courts will not review the actions of a governing body of a church in matters relating to the internal affairs of such organizations. Our consideration of said cases discloses they are authority for such a conclusion only when property rights are not involved. Where property rights are at issue the rule is clearly different. In 45 American Jurisprudence, Verbo Religious Societies, Page 768, Section 59, we find:
"§ 59. As before stated, so far as the purely ecclesiastical or spiritual features of a church or religious society are concerned, the civil courts have steadily asserted their want of jurisdiction to hear and determine any controversy relating thereto. On the other *681 hand, the civil courts have frequently and without hesitation exercised their jurisdiction to protect the temporalities of such bodies, for whenever rights of property are invaded, the law must interpose equally in those instances where the dispute is as to church property and in those where it is not."
The foregoing clearly demonstrates that property rights are determined by the law and the courts notwithstanding the property involved is classified or characterized as property belonging to a church, fraternal organization, society or other similar institution.
For the reasons hereinabove set forth, it is ordered, adjudged and decreed that the judgment of the trial court sustaining defendants' exceptions of no right and no cause of action and dismissing plaintiff's demand be and the same is hereby reversed, said exceptions of no right and no cause of action hereby overruled, and this cause of action remanded to the trial court for further proceedings not inconsistent herewith.
Reversed and remanded.